## ROSENBAUM et al. v. INDUSTRIAL COMMISSION et al.

No. 7021.   Decided October 9, 1947.   (185 P. 2d 511.)

See 71 C. J. Workmen's Compensation Acts, sec. 212. Workmen's Compensation; liability of general or special employer for compensation to injured employee, see note, 152 A. L. R. 816.

*Thatcher & Young,* of Ogden, for plaintiffs.

*Wilford M. Burton,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for defendants.

WOLFE, Justice.

Certiorari from the Industrial Commission of Utah from a finding that Morris Dewayne Rosenbaum was not an employee of an employer subject to the Workmen's Compensation Act.

While Rosenbaum was working on the roof of the Box Elder County Jail, he slipped and fell and was killed.

The question at issue may be better understood after we give some of the facts, especially those undisputed.

Carl Seashore, a tinsmith, had a contract with the county to paint and repair the roof of the Box Elder County Court House and jail, which contract included furnishing labor and materials. H. Fay Sholty, a painting contractor, subcontracted orally with Seashore that he, Sholty, would do the painting and furnish the labor and "materials" except that Seashore would furnish the paint. For this job Sholty was to receive $100. This $100 was paid by Seashore to Sholty before the work was completed in order to be payable out of the year's budget. Sholty completed the painting of the roof of the courthouse, but before he could do the jail roof he was delayed by weather. When nice weather returned and Sholty, because busy on other jobs, did not resume the work, Seashore "jumped on him" because he did not continue the work, whereupon a conversation took place between them, the verions of which vary slightly. Sholty testified that he told Seashore

"If you get it done before I can, *I will pay for it, of course.*"

Seashore testified Sholty told him

"If you can get it finished before I can, *get it done and I will pay your men for it.*" (Italics ours in both conversations.)

Seashore's testimony itself varied somewhat between his stating that Sholty said

"I will pay for it," "I will pay the men," or "I will pay your men for it,"

then ended by describing it as

"Something on that order."

Subsequently, Seashore mentioned the conversation to two of his employees—his son and Morris Dewayne Rosenbaum. He told them that "we" had better finish the job; that Sholty had said to go ahead and he would pay for it. The son and Rosenbaum went ahead, furnishing their own brushes, and using equipment found on the job. They had worked some two hours or more when Rosenbaum slipped and fell from the building and suffered injuries from which he died. *After the accident, Sholty paid Rosenbaum by check for his time* and *also paid Seashore's son. Sholty completed the work thereafter.*

Sholty did not know that either Rosenbaum or Seashore's son had gone on the job until he learned of the accident. He had never had any conversation with either of them about the job. The son and Rosenbaum went on the job the first afternoon they didn't have anything to do for their employer, Seashore. Seashore never employed more than two men. Sholty employed as high as 20. Therefore, under Sec. 42-1-40, U. C. A. 1943, Seashore was an employer not subject to the Industrial Commission Act, but Sholty was. The question pertains to jurisdiction. Jurisdiction is just as much involved where the Commission denies that an employee or employer is subject to the Workmen's Compensation Act as in the cases where it takes jurisdiction. Hence in this case we weigh the evidence and determine whether the Commission wrongly decided it did not have jurisdiction.

There have been various factors suggested in the cases for determining whether a person was an employee of an-

other or an independent contractor. In instances these may be helpful in determining as between two parties who was the employer of certain employees. *Murray* v. *Wasatch Grading Co.*, 73 Utah 430, 274 P. 940; *Miller* v. *Ind. Comm.*, 97 Utah 226, 92 P. 2d 342; "Determination of Employer-Employee Relationships in Social Legislation," Columbia Law Review, June, 1941, Vol. XLI, p. 1015.

The tests laid down in the cases to determine whether an employee, at the time of the accident, bore the relationship to one or the other of two persons are really of little value in this case. The evidence of the understanding between Sholty and Seashore set out above sufficiently ■ shows that Seashore sent his son and Rosenbaum on the job not on his own account but on account of Sholty. Under the evidence it was for the account of Sholty. Why for the account of Sholty rather than on his own account? Because there still existed the contract between Seashore and Sholty that the former was to furnish the paint and the later was to furnish the *labor* and equipment. This contract had never been terminated nor repudiated. All of the evidence of the conversation between Seashore and Sholty, whichever version taken, as set out in the main opinion, is consistent only with the theory that Sholty recognized his obligation as subsisting and if Seashore got to it first, the work was to be done on account of Sholty. Sholty knew he had been paid and did not offer to rescind the contract and pay back the money to Seashore. He in effect said to Seashore:

"I have other work I must do. I have a contract with you to do this painting and you have the primary obligation with the county to do it so we are both anxious to see it finished. If you have any men available you do it and I'll pay them."

This certainly is consistent only with the view that if Seashore's men did the work it would be for the account of Sholty. It was not, under this arrangement, necessary for Sholty to hire the men or know when they were working. Seashore was doing it on Sholty's account and either loaning

his employees to Sholty or in instructing them to work on Sholty's job was doing it as agent of Sholty. The statement of Sholty that he would pay "your men for it" is consistent only with the theory that the work was to be done on Sholty's account. Sholty paid both Seashore's son and Rosenbaum. The payments made by Sholty to or on behalf of the boys were not "consistent with a refund." It would indeed be a very peculiar manner of refunding money. It would have been most easy for Sholty to tell Seashore:

"I have not time to do the job. I want to throw up the contract. Here is your hundred dollars. You do the work yourself."

Instead of that, Sholty retained the hundred dollars and told Seashore:

"If you can get it done before I can I will pay for it of course" or "I will pay you for it," or "I will pay your men for it."

This language is not consistent with the repudiation of a contract but only with the intention to fulfill a contract. Moreover, *Sholty finished the job.* The conduct of the parties throughout is consistent only with an understanding that Seashore's efforts to finish the job would be on behalf of Sholty and on his account.

The findings and award of the Commission are set aside. Costs are awarded to plaintiffs.

McDONOUGH, C. J., and WADE, and LATIMER, JJ., concur.

PRATT, Justice (dissenting).

When there are two equally reasonable inferences that may be drawn from uncontroverted facts and the Commission has adopted one of them, I wonder if we are justified in vacating the Commission's decision simply because we prefer the other—and it is a jurisdictional question?

A recent decision of the Supreme Court of the United States has these statements upon the question:

"And the Deputy Commissioner's findings as to jurisdiction are entitled to great weight and will be rejected only where there is ap-

parent error. * * * The propriety of that inference, of course, is vital to the validity of the order subsequently entered. * * * If supported by evidence and not inconsistent with the law, the Deputy Commissioner's inference that an injury did or did not arise out of and in the course of employment is conclusive. No reviewing court can then set aside that inference because the opposite one is thought to be more reasonable; nor can the opposite inference be substituted by the court because of a belief that the one chosen by the Deputy Commissioner is factually questionable. * * * Even if such an inference be considered more legal than factual in nature, the reviewing court's function is exhausted when it becomes evident that the Deputy Commissioner's choice has substantial roots in the evidence and is not forbidden by the law." *Cardillo* v. *Liberty Mutual Ins. Co.*, 330 U. S. 469, 67 S. Ct. 801, at page 807.

In *Norris* v. *Industrial Commission*, 90 Utah 256, 61 P. 2d 413, we laid down certain rules for reversing the Commission. At page 261 of 90 Utah, at page 415 of 61 P. 2d, we find among them this:

"* * * (e) precludes any other explanation or hypothesis as being more or equally as reasonable * * *."

The prevailing opinion in this case takes the view that when Seashore sent his son and Rosenbaum on the job he did so intending to aid Sholty complete the latter's job. In other words, Seashore was acting as Sholty's agent in obtaining employees for the latter. It seems to me that such an inference from the facts is a failure to recognize human nature.

Seashore was the prime contractor and directly responsible to the county for the completion of the painting. When he discovered that his subcontractor was not performing, he realized that his own responsibility was being jeopardized. He contacted Sholty to see if matters could not be pushed along. Sholty was unable to proceed, so he said Seashore: "If *you* can get it finished," etc. *"You"* refers to Seashore, not Sholty. When Seashore reported the matter to his son, he said "we" had better finish the job—that Sholty had said to go ahead and he would pay for it. I see nothing in these statements that indicate that Sholty had in mind when he addressed Seashore:

"If you'll get me sufficient employees to do the job I'll proceed."

Certainly if he invited Seashore to get him, Sholty, employees to proceed, it was rather superfluous that he would also promise his agent Seashore that he Sholty would pay his own employees. That would be assumed—that he would pay anyone working for him—but if he had in mind that Seashore was to take the responsibility for the job, naturally he would volunteer to pay Seashore's employees. By that promise he assumed pay responsibility to another's employees. The Commission had the right to take as true the statement that is attributed to Sholty to this effect: "I'll pay *your* men." "Your" refers to Seashore's men. Sholty invited Seashore to take over. That is why he promised to pay Seashore's men. Seashore was looking after his own responsibilities not Sholty's. The latter's could be settled later.

Of course, the continuance of Sholty, after the accident, of the balance of the contract gives a foundation for a legalistic form of reasoning that Seashore was not acting for himself in sending his son and Rosenbaum on the job, but: Put yourself in the prime contractor's position of responsibility to the county and, finding that your responsibility was being jeopardized, is it likely that you would measure your efforts to protect yourself by such a roundabout legalistic form of reasoning? You'd probably act for yourself first and then figure out the effect afterward, especially if what you were doing met the approval of the other contracting party. These parties were not lawyers appraising their own conduct as past events and in the light of their knowledge of the intricacies of legal principles. I am of the opinion that their actions were rather natural and in line with what they thought was an agreeable way of settling a bad situation. Adjustments could follow, at that time it was: Get the job done—protect Seashore, not Sholty.