THATCHER et al. v. INDUSTRIAL COMMISSION et al.

No. 7178.   Decided June 9, 1949.   (207 P. 2d 178.)

See 16 C. J. S., Constitutional Law, sec. 628.

*Thatcher & Young*, Ogden, for plaintiffs.

*Grover A. Giles*, Attorny General, and *Zar E. Hayes* and *S. D. Huffaker*, Assistant Attorneys General, for defendants.

WOLFE, Justice.

Certiorari to the Industrial Commission to review a decision allowing the attorneys for the applicant a fee of $375 in the matter of *Rosenbaum* v. *Industrial Commission.*

Plaintiffs are co-partners licensed to practice law and doing business as attorneys-at-law under the firm name of Thatcher & Young.

In February, 1946, Morris Dewayne Rosenbaum died of injuries while in the employment of another. His widow claimed compensation for his death on the ground that

when injured he was employed by one Sholty who had more than three persons in his employ. The real issue was as to whether Rosenbaum, was, at the time of his injury, in the employ of Sholty or of one Seashore, who had less than three persons in his employ and who was, therefore, not subject to the Workmen's Compensation Act. The commission decided the case against Mrs. Rosenbaum, the widow of the deceased workman, holding that the deceased was at the time of his injury in the employment of Seashore. The widow thereupon consulted with the plaintiffs herein who undertook to obtain a reversal of the commission's order denying an award, agreeing to charge a fee only in the event that they should be successful. If successful, a fee reasonable in amount was to be agreed upon between the widow and her attorneys, plaintiffs herein. From this point, we outline in some detail the work of plaintiffs in order that the reader may have some idea of the services performed.

The plaintiffs, as attorneys for the dependents of the deceased Rosenbaum, filed with the Industrial Commission an application for rehearing which was denied. Plaintiffs then took the case to this court with the result that the order of the Industrial Commission was, by a divided decision, set aside. See *Rosenbaum* v. *Industrial Comm.*, 112 Utah 109, 185 P. 2d 511.

The respondents in the *Rosenbaum* case filed a brief on rehearing but failed to file a petition for rehearing. Thereupon the plaintiffs herein, attorneys for dependents of deceased Morris Dewayne Rosenbaum, filed a motion in this court for the issuance of a remittitur. The respondents filed a motion to be relieved of their default in failing to file a petition for rehearing. The motion to remit the record was denied and the motion of respondents to be relieved of default was granted. The plaintiffs herein, as attorneys for the dependents of Rosenbaum, thereupon prepared and filed a reply brief to respondents' brief for rehearing. The petition for rehearing was denied by this court and the record thereupon remitted to the Industrial Commission. There-

after plaintiffs and the widow of Rosenbaum agreed between them that the sum of one thousand dollars ($1,000) was a reasonable fee, which the widow, acting for all the dependents, agreed to pay. On remittitur the commission vacated its previous order denying an award, and entered an order awarding to the dependents of the decedent benefits in the sum of seven thousand two-hundred and fifty dollars ($7,250), at the same time fixing the fee of the plaintiffs herein for legal services rendered to the dependents of Rosenbaum at three hundred and seventy-five dollars ($375). The plaintiffs thereupon filed with the Industrial Commission their application for a rehearing on the ground that the sum of three hundred and seventy-five dollars ($375) was inadequate for the services performed and that one thousand dollars ($1,000) was a reasonable fee. The petition for rehearing was by the commission denied, hence this review.

The plaintiffs contend: (1) That Section 42-1-81, U. C. A. 1943, purporting to authorize the Industrial Commission to regulate and fix attorney's fees, is unconstitutional and void as an unwarranted legislative and executive interference with the judicial branch of the government in that it violates Article V, Section 1, of the Constitution of Utah and therefore the order fixing the fees of plaintiffs is without authority and null and void.

(2)   That the action of the commission in fixing the fees without notice to plaintiffs and opportunity to be heard was without due process of law and a denial of the equal protection of the laws in violation of Section 1, Amendment XIV, of the Constitution of the United States and of Article I, Section 7, of the Constitution of Utah.

(3)   Even if Section 42-1-81, U. C. A. 1943, giving the commission authority to regulate and fix fees is valid, it acted arbitrarily, capriciously and unreasonably in refusing to approve the agreed fee of one thousand dollars ($1,-

000) and in fixing such fee at the sum of three hundred and seventy-five dollars ($375).

We consider the contentions in the order set forth above.

. The argument on the first contention runs as follows: That in our tripartite form of government the legislative and executive cannot intrude upon the judiciary and vice versa; that the judiciary has the paramount power to lay down rules of practice and procedure, although the legislature may make reasonable regulations in aid of that power but not supersede it; that the judiciary has the sole power to license and admit attorneys to practice before the bar because as officers of the court they are part of the judicial system; that the judiciary has the sole power to discipline attorneys for unprofessional conduct and in pursuance thereof to suspend and disbar attorneys guilty of such conduct; that this court has exercised and is in the process of exercising its power in all three of the above named fields. It does not clearly appear from plaintiff's brief whether they expressly contend that the judiciary has the power to regulate the conduct of attorneys in their practice of the law and to fix or regulate their fees. It appears, however, that it would be necessary for us so to find in order to reach the conclusion they ask us to reach. At any rate, they contend that if any branch of the government has such power in respect to attorneys it is the judiciary and not the legislative nor the executive branches.

It is not necessary in this opinion for us to determine or even to discuss the difficult questions of what are legislative, executive and judicial functions nor to fix the boundaries of each field. Attention is called to the lengthy treatise on this matter contained in *Tite* v. *Tax Commission,* 89 Utah 404, 57 . 2d 734.

It should be noted that Article V of our Constitution says that

"no person charged with the exercise of powers *properly belonging to one of these departments,* shall exercise any functions appertain-

ing to either of the others, except in the cases herein expressly directed or permitted." (Emphasis added.)

It does not say that no person charged with the exercise of powers properly belonging to one of those departments shall not exercise functions which partake in their nature of the quality of those functions exercised by either of the other departments. Modern governments could not exist if that were the case. What was probably intended was that the function of primary law making shall be exercised by the legislature; that the executive department shall have the duty of execution and enforcement of the laws (which duty may require manifold regulations and even secondary law making functions within the limits and according to the standards set by the legislature) ; that the judiciary shall have the final power and duty of interpreting the laws. Administrative agencies in order to operate must at the outset exercise powers fundamentally in nature either judicial, legislative or executive or a combination of all, but they derive such power from the legislative branch and, while they must in many cases interpret the laws which instituted them or other laws are subject to final adjudication and review by the judicial branch. We know by tradition and custom in a general way what matters all three of these departments deal with. It would be fruitless and unwise to try to delineate in advance of specific and concrete cases the boundaries separating the functional activity of any of the departments. The plaintiffs would not, we think, deny any of the above observations. What they contend for is that the regulation and fixing of fees of attorneys is essentially and solely the power of the judiciary and that if such regulation and fixing the fees of attorneys is an exercise of the police power, it must be applied by the judicial branch of the government.

Our difficulty with this argument is that we are not aware of any power in the judiciary to fix or regulate attorney's fees. We do not think it can be inferred from the power to promulgate rules of practice and procedure nor from

the power to provide for the examination, licensing █ or regulation of admission to the bar of persons seeking to practice law, nor from the auxiliary power to discipline attorneys as officers of the court for unprofessional conduct. It is unnecessary at this time to determine whether the judiciary has the power to regulate or fix fees. It has the power to determine what is a reasonable fee when the law or the contract of the parties provides for a reasonable fee. That is a question presented by the litigation, and it fixes the fees for its receivers and other non-attorney officers. If there is power in the courts to fix a fee scale or regulate fees, it has not been exercised. In general it has been left to the freedom of contract which in the main opinion in the case of *McGrew* v. *Industrial Comm.*, 96 Utah 203, 85 P. 2d 608, has been called a property right. Freedom of contract accurately speaking, is a constitutional right which may give birth to, but is not itself, a property right, and like many other constitutional rights is subject to reasonable police regulation. So, likewise, the attorney's fee is left to agreement between the attorney and his client subject to the right of the court to discipline the attorney where the fee charged is unconscionable, or advantage is taken of the ignorance of the client. But such conduct would be unprofessional conduct and for that reason the court might take cognizance of the case through the grievance committee of the Bar. We must therefore conclude that the judiciary does not regulate attorneys in the sense that it supervises them in their office transactions and that the matter of fixing fees is generally a matter of agreement. If this were not so, and if plaintiffs were correct in regard to their contention that the judiciary has the sole right to fix or regulate fees, the provision in Sec. 6-0-40, U. C. A. 1943, formerly same section R. S. 1933, reading:

"The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law,"

would be unconstitutional.

The problem, therefore, reduces itself, not to one of determining what are the powers of the judiciary in regard to regulation and fixing of fees, but of determining whether the legislature has the right to impair the freedom of right to contract between an attorney and his ■ client for a fee by giving to the Industrial Commission full power to regulate and fix reasonable fees of attorneys in cases before the commission in which attorneys have been employed. We have no doubt that legislature, under its police powers, has such right in compensation cases.

The rule above stated was followed by this court in *Ellis* v. *Industrial Comm.*, 91 Utah 432, 64 P. 2d 363. All of the judges concurring and dissenting in that case agreed on that proposition· even to the extent of holding that the Industrial Commission had the power to fix the fee for services performed not only before the commission but before this court on certiorari issued to the commission. See also *Corbin* v. *Wilkinson*, 175 Okl. 247, 52 P. 2d 45, 47, quoted with approval in the prevailing opinion of the Ellis case. If the rule were otherwise, an overlarge share of the compensation much needed to support the family of the injured or deceased workman might be diverted to the attorney. In some, if not in most cases, counsel for the applicant will have to take less than he might properly charge for work not involving workmen's compensation, since the traffic may not bear the full value of the services performed.

One of the purposes of the compensation acts was to provide the employee with a remedy without the delays, expenses and uncertainties of a court trial. Under the compensation acts, both employer and employee gave up certain rights—the employer losing his common law ■ defenses and the employee his right to sue for large damages. In return, the employer received a liability limited and determinate and the employee received the sureness of a prompt and expeditious payment of his claim. Since the amounts which may be awarded under the compensation act

are at all times very modest, and in inflationary times practically penurious, it is apparent that the very purposes of the act would be defeated if attorneys were limited only by the canons of professional ethics in the fixing of fees for services rendered in compensation cases. To permit attorneys to charge usual fees in cases of this sort might practically emasculate any value of the compensation act to the workman. And by this, we do not imply that attorneys habitually charge exorbitant or unfair fees for their services. Rather, in compensation cases, the attorneys must and are willing to accept for their services less than they would receive for the same amount of work in other types of cases. This is more or less in the nature of a professional duty somewhat similar to the duty to defend impecunious defendants in criminal cases.

And a word of caution to the commission may be appropriate here. While attorneys may not hope to be compensated to the full measure of the value of their time and work, they must not be limited to such niggardly fees that they cannot afford to accept compensation cases. And particularly where it has become necessary to carry a compensation case to this court should the commission be at least moredately liberal in allowance of attorney's fees. Better that an applicant should lose 15% to 20% of his benefits in attorney's fees than that he should receive no benefits at all merely because no lawyer could affort or would be willing to accept his case and properly present it to the commission and the courts, for the main reason that the compensation for such services would be grossly inadequate.

It thus transpires that while the attorney and client in compensation cases may have freedom of contract to agree on a fee for services performed by the attorney before the Industrial Commission and before the Supreme Court, such contract is not binding on the Commission and no greater sum may be charged than that fixed by the Industrial Commission, if the fee

so fixed by it is within the limits of reasonableness even though the parties may have agreed on a larger sum.

The plaintiffs contend secondly, that they were denied due process of law in that the Industrial Commission ignored their request for a hearing as to what would be a reasonable fee for the services performed. In this regard, the plaintiffs must prevail. The plaintiffs, attorneys for the defendants, sent a letter to the commission stating that they had agreed with Mrs. Rosenbaum for a fee of one thousand dollars ($1,000) and that if the commission had any doubt as to the reasonableness of this fee, they, the attorneys, would like to be heard on the matter. Many times when the work done is not great and the compensation to be allowed is comparatively small, the commission may fix the fee without first granting a hearing. This is especially the case where all the services performed are in matters which never reach the Supreme Court. Economy of time and effort to all concerned in those cases makes it practical for the commission to fix a fee from its experience in compensation cases without hearing as to the value of the services performed. But if the attorneys or the applicant ask for a hearing on the matter either before the fee is fixed or for a rehearing after the fee is fixed on the amount of the fee allowed, the same should be granted in order to satisfy the requirements of due process. The award of $375 attorney's fee must therefore be set aside and a rehearing on that matter granted, and it is so ordered.

While ordinarily our power does not go beyond that of setting aside an order of the commission, in a case such as this we think it wise to advise the commission as to some of the factors which enter into the determination of a reasonable fee for legal work performed. The commission is perhaps not so cognizant as are we as to what is a reasonable fee for services performed on a contingent basis for matters involving this amount of money recoverable in a death case where the applicant prevails. The commission would not be arbitrary or unreasonable

unless it fixed a fee which any reasonable mind, familiar with the value of attorneys' services would say was less than reasonable. That of course means that there must necessarily be a wide range because attorneys themselves differ widely as to the reasonableness of fees for professional work. And it must be kept in mind that here we are dealing with compensation benefits. Much could be said regarding the amount of attorneys' fees. Lawyers perform differently according to their ability and experience. Some work faster and more accurately and thoroughly than others. Each brings to his task his own capacity, expertness, ability, dispatch and experience. The author in a dissenting opinion in the case of *Ellis* v. *Industrial Commission*, 91 Utah 432, 64 P. 2d 363, dwelt at some length on these factors. It may be briefly said that an incompetent lawyer is apt to be a detriment to his client and is usually overpaid, whatever he receives, while a competent, well-trained, and skillful attorney may ofttimes be underpaid for the services he renders.

Rule 12 of the Revised Rules of the Utah State Bar, adopted May 28, 1936, approved by the Supreme Court of the State of Utah March 1, 1937, with amendments effective March 10, 1940, provides as follows:

"In fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service, though his poverty may require a less charge, or even none at all. The reasonable requests of brother lawyers, and of their widows and orphans without ample means, should receive special and kindly consideration.

"In determining the amount of the fee, it is proper to consider: (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy

and for the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client. No one of these considerations in itself is controlling. They are mere guides in ascertaining the real value of the service.

"In determining the customary charges of the Bar for similar services, it is proper for a lawyer to consider a schedule of minimum fees adopted by a Bar Association, but no lawyer should permit himself to be controlled thereby or to follow it as his sole guide in determining the amount of his fee.

"In fixing fees it should never be forgotten that the profession is a branch of the administration of justice and not a mere money-getting trade."

It should be noted the above does not lay down a rule but presents guides for the fixing of attorneys' fees and so expressly states. It happens in this case that the plaintiffs were a firm of skillful and experienced attorneys. They snatched a brand from the burning in the sense that the case was lost before the commission when they agreed to represent Mrs. Rosenbaum. It was a close case turning largely on the interpretation of a contract relationship which in turn revolved about the interpretation of conversation between Sholty and Seashore susceptible of a varying meaning to intelligent minds. The fee was contingent on success.

It would be the duty of the commission by evidence to fix a fee within the zone of reasonableness. The commission would not ordinarily be required to determine from the evidence what would be the lower and upper limits of the zone for the services in any particular case. But it must be satisfied from evidence adduced as to the reasonable worth of the services rendered that the fee it fixes is within the zone. Evidence from competent counsel as to the worth of services founded upon a statement of what work was performed by the attorneys in the case and the skill required will itself usually be given in terms of a range for the reason that the testifying attorney will be aware that his opinion as to the worth of legal services is only an opinion and will vary somewhat from lawyer to lawyer depending to an

extent upon the experience of the testifying lawyer and the strata of clientele with which he deals.

The commission cannot fix the fee above the amount which the attorney and his client have agreed to, but it may in cases include that under the circumstances thereof, a fee agreed to may be unreasonable in that it takes too much of the compensation award, compensation being what it is. While we make no pronouncement in this case binding on the commission, we can say that the fee agreed on in this case, to wit, $1,000, being on a contingent basis, is within the range between the highest and lowest reasonableness. The client was fully satisfied with that sum realizing that she owed it largely to the work, the faith and the conscientiousness of her attorneys.

The order of the commission is set aside, and the case is remanded for further proceedings not inconsistent with the views herein expressed; costs to plaintiffs.

LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (concurring).

I agree with the result and generally with the reasoning of the prevailing opinion. But I do not see how we can reach this result without overruling *Ellis* v. *Industrial Comm.*, 91 Utah 432, 64 P. 2d 363.

In my opinion, while, under Sec. 42-1-81, U. C. A. 1943, the Industrial Commission is authorized to regulate and fix attorneys' fees, where attorneys are employed in industrial accident cases, it may only fix such fees as will reasonably compensate the attorney for his services rendered. When the amount of the fee as fixed by the commission is either so low or so high that it is beyond the bounds of what is reasonable compensation for the services of the attorney, then it is arbitrary and this court must set aside such an award. In order to determine what is a reasonable fee in a given case the commission should obtain all the evidence

it reasonably can under the circumstances, and to refuse to grant any hearing would also be to act arbitrarily. The commission is not bound to follow the expert opinion evidence on this question and in some cases might be justified in finding contrary to all of such evidence. It should always keep in mind that a person who has suffered an industrial accident receives the very minimum of compensation and that the attorney's fees must be held down to as low a sum as possible within reason.

The above section of the statute does not expressly require the commission to fix the attorneys' fees at a reasonable amount but I think that was intended. The fee of an attorney is his reward or wages or compensation for his professional services. It is not a mere donation which may or may not be withheld and ordinarily he is entitled to what his services are reasonably worth. He is as much entitled to reasonable compensation for his services in this kind of a case as anyone else who renders service. So when the statute authorized the commission to fix attorneys' fees it was intended that the amount fixed would be within the bounds of what constitutes reasonable compensation for such services. I recognize that industrial accident cases are different from ordinary matters which a lawyer is employed to attend to. However, I do not believe that the legislature intended this kind of work to be done without compensation or for unreasonably low compensation. If we adhere to the rule that such compensation may be so fixed then many cases will have to be litigated without the benefit of legal counsel and many a deserving person who is entitled to compensation will be barred therefrom because the commission does not understand the law correctly, and the applicant will not be fortunate enough to contact a lawyer who would take his case, knowing that he would not be adequately compensated for his services. The attorneys' fees should therefore be fixed within the bounds of reasonable compensation for the services rendered and should be sufficient so that the average lawyer can afford to take that kind of case without losing money by such employment.

Of course there may be a wide range between what one person, lawyer or judge would consider a reasonable fee in a given case. And in each mind there would be some difference between the highest and lowest bounds within the range of reasonableness. In all cases the problem is first for the commission to determine and only when the commission refuses to hear evidence thereon or after hearing, acts beyond the bounds of reasonableness, does this court have the power to set aside its decision. This is the same rule as is applicable in any other finding of fact. Here the fact found is what is a reasonable attorneys' fee. Where the evidence does not reasonably justify the finding then it is arbitrary and we set it aside. This court is particularly competent to pass on this question because its members are lawyers and have some knowledge of the value of such services.

In order to reach this conclusion I think we must overrule the *Ellis* case, supra. This is what I understand the dissenting opinions in that case held, but I think such a holding is contrary to the majority holding. I think the difference was more than merely the difference in opinion as to what amount would be necessary to bring the award within the bounds of a reasonable fee. The basis of the majority opinion in that case was as expressed by Mr. Justice Folland that [91 Utah 432, 64 P. 371],

"where the circumstances call for a substantial fee, the commission would be acting arbitrarily if it fixed a mere nominal fee."

In other words, we there held that as long as the fee fixed was more than a nominal sum regardless of how unreasonably low it might be, this court could not set aside the decision. Such is clearly not the rule adopted here in the prevailing opinion. That opinion requires that the fee fixed must be within the range between the highest and the lowest fee which satisfies the requirements of reasonableness. The fee of $375 is not a nominal fee any more than the fee of $300 was in the *Ellis* case and if we adhered to

the same rules in this case which we followed in that case, we would have to affirm the decision of the Commission. To overrule the decision in principle without expressly so stating, tends to create confusion as to the effect of our decision.

PRATT, Chief Justice (dissenting).

I am directing my dissent to that part of the prevailing opinion which discusses the first contention of plaintiffs.

The controversial section of our code reads as follows:

"Section 42-1-81, U. C. A. 1943:

"In all cases coming before the industrial commission in which attorneys have been employed, the commission is vested with *full power to regulate and fix* the fees of such attorneys." (Italics added.)

This is an ill-considered bit of legislation that overlaps the powers of the judiciary. No doubt the legislature had in the back of its mind the thought that it would be of benefit to the applicant before the commission. What they failed to realize was that it is rather effective in driving attorneys away from that class of litigation. It might be classed as a mild form of legislation comparable to a certain enactment of the territorial legislature of this state. Chapter VIII, Laws of Utah 1852 was entitled: "An Act for the Regulation of Attorneys." Section 2 thereof reads:

"No person or persons employing counsel, in any of the courts of this Territory, shall be compelled by any process of law to pay the counsel so employed for any services rendered as counsel, before, or after, or during the process of trial in the case."

If this comparison appeals to the reader as an exaggeration, let us examine the matter for a moment.

The members of this court, all of whom were practitioners at one time or another, have no difficulty in appreciating the fact that a reasonable fee for handling cases before the commission should be measured in the light of the attorney's employment contracts and in the light of the fundamental

purposes of our industrial accident laws. That is evidenced by the opinions filed in this case. Such an appreciation, however, is not something arising out of judicial experience only. It arises from an analysis of the purposes of the law. The practitioner knows it as well as the judge; and both know it far better than the layman, who is unfamiliar with professional services, inexperienced in legal analysis, and easily impressed with adverse thoughts about the legal profession. Section 42-1-81, however, places the responsibility of applying this measure upon the shoulders of the layman, the least qualified of the three to understand the application. This fact alone however, means nothing. A jury of laymen have a final determination of similar questions of fact in trials before the courts. Many administrative fact finding bodies have given to them the power to make final determinations of questions of fact. Such powers are not questioned if properly limited—in the jury case by instructions from the court; in legislation by standards or rules to govern their considerations. In the case of *Revne* v. *Trade Commission*, 113 Utah 155, 192 P. 2d 563, 3 A. L. R. 169, certain standards were fixed and discussed as a foundation for determining the price of hair cuts. But has section 42-1-81 (quoted) any such limitations? No.

No standards, rules or instructions are given the commission to advise them as to the method of determining the area of reasonableness within which they may fix the fees. Except by implication, there is not even an indication that the fees are to be reasonable. The word "reasonable" is not used. Furthermore, the indifference as to the possible arbitrariness of the commission's rulings as to fees is evidenced in another way. No provision for appellant review of the commission's finding as to those fees is provided. This may seem a strange statement in view of the *Ellis* case, 91 Utah 432, 64 P. 2d 363, cited in the prevailing opinion, and our acceptance of the present case. Our right to accept it is very questionable—so far as this statutory law is concerned. The only review contemplated by the

Industrial Act is of the award; and "award" is defined, par. 7, Sec. 42-1-42, as the finding or decision of the commission as to the amount of compensation due any injured, or the dependents of any deceased employee. The award includes any of the appropriate items covered by such sections as 42-1-61, 62, 63, 64, 65, 66 and 75, in none of which is reference made to attorneys' fees. Such fees are not part of the award. The fact that the alleged purpose of Section 42-1-81 is to prevent the attorney taking too great a part of the award as fees, is a recognition that the amount of the award is not governed by the necessity of paying attorneys' fees. When laymen are handed *"full power to regulate and fix* the fees"—to control the purse strings— with no checks or balances, it is quite easy for their minds to assume that rather popular fear complex conceived in the belief that the legal profession is afflicted with predatory instincts, and needs watching. As a result, situations develop just as developed here: A fee fixed without notice, without evidence, without knowledge of professional services—arbitrarily.

In the *Ellis* case we said that it did not make any difference whether or not the attorney had appeared before the commission; that the commission's power included fixing fees for appearances solely before the Supreme Court. Is that true, regardless of the public interest in the administration of justice?

"The practice of law is so intimately connected and bound up with the exercise of judicial power in the administration of justice that the right to define and regulate its practice naturally and logically belongs to the judicial department of our state government."

*In re Integration of Nebraska State Bar Ass'n,* 133 Neb. 283, 275 N. W. 265, 268, 114 A. L. R. 151.

The power to affect the functioning of the judicial branch of the government will lie with the legislature only so long as the courts surrender that power to them. *Integration Bar Case,* 244 Wis. 8, 11 N. W. 2d 604, 151 A. L. R. 586.

As a matter of comity and in the interests of teamwork between branches of the government, there are times when an insistence upon a strict adherence to division lines between branches of the government will accomplish little; but when the legislation takes the form of driving counsel away from a particular class of litigants, it is time for the courts to guard their rights and insist upon adherence to those divisions—not to protect the attorneys, but to prevent the maladministration of justice.

It is human nature to shy away from the arbitrary control of others, and attorneys are no exception. Met with a law in which the layman is given such unbridled control of his fees, the attorney prefers to switch his attention to fields where arbitrariness is less apt to follow. Who suffers as a result? The applicant before the commission, as he (or she, as in this case) is handicapped in acquiring justice. He either must accept inferior service, or must fight his battle alone against astute well paid counsel of—in many instances —his corporate employer. In this case the applicant lost before the Commission without counsel. Counsel saved the situation for her, and she recovered.

The attorney is a necessary part of our judicial system. *Ruckenbrod* v. *Mullins*, 102 Utah 548, 133 P. 2d 325, 144 A. L. R. 839; *State* v. *Cannon*, 206 Wis. 374, 240 N. W. 441. He is also a citizen and should bear his share of the burden of society—his share of the regulations of society. The really important line to be drawn is between the legislation which affects him merely as the citizen practicing a profession, and that which affects him in his capacity as a court officer. The latter is of public interest.

On July 30, 1886, 24 Stat. 107, 48 U. S. C. A. § 1471, Congress enacted a law providing that the legislatures of the territories of the United States shall not pass local or special laws regulating the practice in courts of justice. When our State Constitution was adopted in 1896, this provision became par. 6, Sec. 26, Art. VI, of that Constitution. This has been interpreted in *Lyte* v. *District Court*, 90 Utah

369, 61 P. 2d 1259. Recently, Chapter 33, Laws of Utah 1943, our legislature recognized that our Supreme Court has the power to regulate the practice before the courts; and provided that when the court's rules of practice are made effective they shall supersede all legislation in conflict therewith. These enactments are clear recognitions of the power in the judiciary to govern the matters of practice in the administration of justice.

To discuss the section of our code, 42-1-81, in controversy on the basis of an exercise of police power regulating attorneys, is to draw attention away from the harm to the public in the administration of justice. The power to regulate the practice of professions can be conceded; but when legislation having the earmarks of such a purpose, in reality interferes with the administration of justice, then the courts must take a hand.

This legislation does affect the administration of justice —and does affect the practice before this court; and the power to govern the conduct or fees of attorneys as a matter of regulation is beside the point. There is not much difference between saying attorneys shall not be paid for their services (Chap. VIII, Laws of Utah 1852, quoted), and saying that in certain classes of cases they shall be paid only what a designated layman or group of laymen sees fit to grant them—the litigant loses the benefit of the expert presentation of his case to the court on review, and the preparation for review. It makes no difference that by judicial interpretation we may place the proper safeguards around Section 42-1-81. This brings the matter down to what is suggested in the prevailing opinion.

That opinion appears to recognize a deficiency in Section 42-1-81, although it upholds its provisions. This recognition appears in this way: The opinion quotes, as a guide for fixing fees, Rule 12 of the Revised Rules of the Utah State Bar with amendments. There is, however, nothing in the legislative enactment in question which indicates that the

legislature thought the commission's determination should be upon a measure such as is outlined by the requirement of that rule. Nothing is said in the law about it.

The question before us is not one of whether or not the court has power to fix a schedule of attorneys' fees; nor is it one to regulate attorneys in their office practice. It is a question of whether or not the legislature should be permitted to enact a section of the code which interferes with the administration of justice. It is not a question merely personal to the attorneys, but one of great public importance—one as to whether or not we should take a backward step in the direction of the 1852 law, quoted, and interfere with the administration of justice by driving the attorney away from the kind of practice discussed herein. We can go back over the years if we want, step by step, but it might be advisable to think of those steps in the light of their effect on the administration of justice. The strength of our government lies in the maintenance of the strength and independence of its branches.

Section 42-1-81, U. C. A. 1943, should be declared unconstitutional and, in so far as this particular case is concerned, the fee agreed upon between attorney and client upheld.