Harold A. Stevens, J.
This is a motion by plaintiffs for summary judgment pursuant to subdivision 9 of rule 113 of the Buies of Civil Practice. Though the defendants did not file a cross motion we may, under the rules, award judgment dismissing the complaint on the merits if we deem it warranted.
The plaintiffs contend that the defendants “were and are without power to promulgate or enforce Buie 4 of the Special Bules Begulating the Conduct of Attorneys and Counselors-At-Law in the First Judicial Department (hereinafter referred to as * Buie 4 ’) ”.
The plaintiffs in their pleadings contend that there is no constitutional or statutory power in the defendants to enact Buie 4, herein called Buie, that it is in violation of plaintiffs’ rights, that their action, if upheld, will deprive plaintiffs of liberty and property without due process of law, and will impair plaintiffs’ contracts, all in violation of the applicable provisions of the Federal and State Constitutions.
The answer of the defendants denies “promulgating ” the Buie, but admits it ‘ was adopted ’ ’ by defendants, denies that they lack the power “except that they admit that they claim, contend and assert that the promulgation and enforcement of said rule is within the power of the defendants as Justices of the Appellate Division of the Supreme Court of the State of New York in and for the First Judicial Department and within the power of that Court, and that in promulgating and enforcing said rule as Justices of that Court they have not exceeded and are not exceeding their powers and that said rule is valid, of full effect, and subject to disciplinary enforcement against plaintiffs and others similarly situated” (italics ours).
*741 The answer denies the existence of a “justiciable” controversy but admits ‘ ‘ that a controversy exists between the parties, and the defendants state they have no objection to the adjudication in this action of the rights asserted by the plaintiffs in the complaint
Both parties agree that there is no question involved here whether the Buie is necessary, desirable or fair, that the only issue presented is ‘ ‘ have the defendants the power to ‘ promulgate ’ or ‘ adopt ’ such Bule, and do the defendants have the power to grant it ‘ legal ’ or ‘ disciplinary ’ enforcement?”
On September 21, 1956, the defendants amended the Special Buies of the Appellate Division, First Department, by adopting or promulgating Buie 4. Later, after a hearing on December 4, or December 5, 1956, the Buie was amended, as well as rules 1 and 4B of the Special Buies, effective January 1, 1957.
The Buie is entitled ‘ ‘ Contingent Fees in Claims and Actions for Personal Injury and Wrongful Death”.
The Buie is too long to set forth in full. Generally, it establishes a scale of fees in personal injury and wrongful death cases, provides that acceptance of compensation equal to or less than such scale ‘ is deemed to be fair and reasonable ”, The receipt or retention of any sum in excess of such scheduled fees “ shall constitute the exaction of unreasonable and unconscionable compensation in violation of Canons 12 and 13 of the Canons of Professional Ethics of the New York State Bar Association, unless authorized by a written order of the court”.' There is a provision for making application for additional compensation because of “ extraordinary circumstances ” which may be granted or denied in the discretion of the court. The attorney in all cases is required to file a closing statement with the Clerk of the Appellate Division.
The amendment was entitled “ Amendment of Bule Begu-Inting Contingent Fees ”. At the hearing, prior to the amendment, the question of the power of the court to adopt Buie 4 was not considered. The exclusion was set forth in the notice of hearing.
It may be advisable at the outset to look to the New York State Constitution and to the statutes to ascertain what provisions are of importance here.
Section 1 of article VI of the Constitution of the State of New York, states, in part, “ The supreme court is continued with general jurisdiction in law and equity, subject to such appellate jurisdiction of the court of appeals as now is or hereafter may be prescribed by law not inconsistent with this article”. The Legislature is given the power to alter the *742 judicial districts, and is empowered to increase the number of justices in any judicial district, within certain stated limitations. The Legislature has the same power ‘ ‘ to alter and regulate the jurisdiction and proceedings in law and equity that it has heretofore exercised ”. (N. Y. Const., art VI, §
Article VI, section 2, sets forth, in part, ‘ ‘ The several appellate divisions, except as hereinafter provided, shall have and exercise such original or appellate jurisdiction as now is or hereafter may be prescribed by law.” It formerly provided also that ‘ ‘ the appellate division shall have the jurisdiction now exercised by the supreme court at its general terms and by the general terms of the court of common pleas for the city and county of New York, the superior court of the City of Buffalo and the City of Brooklyn, and such additional jurisdiction as may be conferred by the legislature ”. Certain powers of appointment and removal for its employees were set forth also, and they still have certain powers of appointment.
It now reads, in part, “ No justice of the appellate division shall, within the department to which he may be designated to perform the duties of an appellate justice, exercise any of the powers of a justice of the supreme court, other than those of a justice out of court, and those pertaining to the appellate division, except that he may decide causes or proceedings theretofore submitted, or hear and decide motions submitted by consent of counsel, but any such justice, when not actually engaged in performing the duties of such appellate justice in the department to which he is designated, may hold any term of the supreme court and exercise any of the powers of a justice of the supreme court in any judicial district in any other department of the state. The justices of the appellate division in each department shall have power to fix the times and places for holding special and trial terms of the supreme court held therein and to assign the justices in the departments to hold such terms; or to make rules therefor ’ \
Turning to the Judiciary Law we find that sections 70 to 108 of article 4, inclusive deal with or refer to the Appellate Division. Section 77 deals with the power of the Appellate Division, First Department, to appoint certain personnel for the courthouse of the Appellate Division of the Supreme Court, while section 78 empowers them to make rules for the management and protection of the law libraries, courthouses, and courtrooms in this department.
*743 Section. 83 provides that a majority of the Justices of the Appellate Division in the four departments “by joint order of the four presiding justices or justices presiding, shall have the power, from time to time, to adopt, amend or rescind any rule of civil practice, not inconsistent with any statute; and a majority of the justices of the appellate division in each department, by order of such majority, shall have power, from time to time, to adopt, amend or rescind any special rule for such department not inconsistent with any statute or rule of civil practice ” (italics ours).
Subdivision 2 of section 90 provides in part that the Appellate Division in each department may admit persons to, or remove them from the practice of law. Each department is authorized ‘ ‘ to censure, suspend from practice or remove from office any attorney and counselor-at-law admitted to practice who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice ”, while subdivision 6 provides for service of the charges before suspension or removal, and gives the accused the right to be heard in his own defense.
It would seem that section 83 confers and/or recognizes the power of the Appellate Division to adopt or amend special rules subject to the limitation that such rule be not inconsistent with any statute or rule of civil practice, while subdivision 2 of section 90 refers to the disciplinary power and would seem to be operative following upon the doing of an act or acts. See the dissent of Mr. Justice Conway in Erie County Water Auth. v. Western New York Water Co. (304 N. Y. 342, 352): ‘ ‘ The statute here, subdivision 2 of section 90, is concerned with the disciplining of an attorney who has already committed an act of misconduct. * * * The procedure provided for implementing subdivision 2 of section 90 is cumbersome and is aimed at investigation and punishment of an attorney for past conduct.” (Italics ours.)
Section 92 confers certain general powers upon the Presiding Justice and Appellate Division in the First Department. The remaining sections (§§ 93-108 inclusive) deal with the powers of the Appellate Division, and Justices of such departments, to make specified appointments, retirements of personnel and annuities or pensions for such persons.
Our next inquiry must be to ascertain if there is a specific statutory provision dealing with the compensation of attorneys or counselors at law. We find that section 474 of the Judiciary Law, is devoted to this subject. It reads, in part, as follows: *744 “ The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law, except that no agreement made hereafter between an attorney and a guardian of an infant for the compensation of such attorney, dependent upon the success of the prosecution by said attorney of a claim belonging to said infant, or by which such attorney is to receive a percentage of any recovery or award in behalf of such infant or a sum equal to a percentage of any such recovery or award, shall be valid or enforceable unless made as hereinafter provided ” (Fowler v. Callan, 102 N. Y. 395). Power is conferred upon the court in such case “to fix the amount of such compensation,” summarily determining’ the value of such services. It should be noted that infants are wards of the court.
Sections 475 and 475-a of the Judiciary Law afford an attorney a lien upon his client’s cause of action when certain things are done.
A reading of section 474 reveals that the statute intended and provided that the compensation of attorneys be fixed by contract or agreement between the parties, with the exception (and there are other stated exceptions such as that dealing with incompetents) noted.
Counsel for the plaintiffs assert that whenever the power to fix fees has been given to any court, such permission has been granted by a specific statute. He argues that the maxim “ expressio unius est exclusio alterius ” applies as a principle of statutory interpretation. That is, the expression of one thing is the exclusion of the other.
The plaintiffs contend further that Rule 4 is not a rule of practice but a substantive enactment, that it is in derogation of section 474 and is therefore void. Moreover, that it deprives plaintiffs of liberty and property without due process of law.
The defendants contend that the Rule was adopted in the exercise of their supervisory powers, that it regulates the professional conduct of attorneys in the First Department, and assert that it does not fix or limit legal fees. The defendants argue also that section 474 of the Judiciary Law does not restrict the exercise of the power of the court over the professional conduct of attorneys, that subdivision 2 of section 90 empowers the court to adopt and enforce special Rule 4.
It is necessary to determine first if the Rule does in fact fix or limit legal fees. We think it is mere shadow boxing to hold otherwise. To hold the contrary is to create a distinction without a difference. The awesome power of the *745 court and the threat implicit in violation of the Rule is as effective a deterrent as if a barbed enclosure channeled or restricted the activities of the individual. The very heading of the Rule and its amendment indicate that it is intended to regulate contingent fees. In that sense we might construe it as intended to govern, order, direct or adjust contingent fees.
The practice of law is a privilege granted, and it is too well established to admit of argument that the court may prescribe rules of conduct, initiate investigations of the conduct or practices of an attorney or groups of attorneys, and punish where it deems punishment warranted (see People ex rel. Karlin v. Culkin, 248 N. Y. 465).
The question we must resolve however is, does this Rule fall within the orbit of professional conduct which the defendants may regulate.
We found in our State no case precisely in point. Looking further afield and at some of our sister States we did encounter cases indicative of the thought of those jurisdictions.
In Utah, section 6-0-40 of the Utah Code Annotated (1943) reads, “ The compensation of an attorney and counselor for his services is governed by agreement, express or implied, which is not restrained by law ’ ’.
Rule 12 of the Revised Rules of the Utah State Bar, adopted May 28, 1936, approved by the Supreme Court of Utah March 1, 1937, with amendments effective March 10, 1940, is essentially the same as our rule 12 of the Canons of Professional Ethics.
In Thatcher v. Industrial Comm. (115 Utah 568), on certiorari to review a determination of an attorney’s fee set by the commission, the decision of the commission was set aside and a contingent fee of $1,000 agreed upon by the parties was allowed as a reasonable fee. The Utah Legislature had given the commission full power to regulate and fix fees in matters before it. The commission had arbitrarily fixed a fee of $375 without a hearing and had denied a request for a rehearing after the fee was fixed. Plaintiffs contended, among other grounds advanced, that the section authorizing the commission to fix attorneys’ fees was unconstitutional and void. In the argument plaintiffs referred to the power of the judiciary to license and discipline attorneys, and to lay down rules of practice and procedure. They seemed to contend as well ‘ that the judiciary has the power to regulate the conduct of attorneys in their practice of the law and to fix or regulate their fees ” (p. 573).
*746 We note with interest and cite with approval the court’s language that the judiciary does not regulate attorneys in the sense that it supervises them in their office transactions, and the matter of fixing fees is generally a matter of agreement; that the court has a right to discipline the attorney where the fee charged is unconscionable, or advantage is taken of the ignorance of the client. At pages 574 to 575, the court used this language: “ we are not aware of any power in the judiciary to fix or regulate attorneys’ fees. We do not think it can be inferred from the power to promulgate rules of practice and procedure nor from the power to provide for the examination, licensing or regulation of admission to the bar of persons seeking to practice law, nor from the auxiliary power to discipline attorneys as officers of the court for unprofessional conduct ”.
In referring to rule 12, the court pointed out that it merely “ presents guides for the fixing of attorneys’ fees and so expressly states ” (p. 580). The court stated the commission should have granted a hearing or rehearing on the fee in order to satisfy due process.
Shannon v. Ottawa Circuit Judge (245 Mich. 220) is another case of interest. There the Circuit Court of Ottawa County by local rule 3, provided that where a plaintiff was unable to give security for costs in certain actions where required to do so, he should file an affidavit stating that he had a good and meritorious cause of action. The attorney of record should file a stipulation with the affidavit that there was no agreement or understanding for a division or share of the judgment, etc.; the stipulation to further provide that the proceeds recovered should be paid into the hands of the clerk of the court until disposed of, first, by payment of costs.; next, the attorney to be paid a sum to be fixed by the court; and the remainder to be paid to the plaintiff.
There was a showing of a meritorious cause of action and that plaintiff was unable to give security for costs. This was a mandamus proceeding to compel defendant to vacate an order denying- plaintiff permission to proceed without furnishing security for costs. The writ was granted. The Supreme Court of MmLigan- Fellows, X, held that the rule ‘ ‘ in its practical operation and in effect inhibits the making of contracts between attorneys and their clients which this State has recognized as valid and enforceable, and empowers the circuit judge to arbitrarily fix the compensation of attorneys without providing for any hearing on the subject; it adopts a public policy on the question of contingent fees of attorneys for the *747 county of Ottawa in conflict with the public policy on that subject in every county in the State, and does all this under a rule ostensibly prescribing the method of procedure in that court. The rule * * * attempts to define the public policy of the State as effective in that county, and to fix the substantive rights of parties and their attorneys in that county different from such rights in other counties of the State ’ ’ (pp. 221-222). Again, “ Contracts for contingent fees probably have their faults, and possibly there may be many of them, but if they are to be outlawed by a declaration of a change of public policy, that declaration should be made by the legislative department for the whole State, not by a local rule of one court in one of the counties in the State ” (p. 222).
The court pointed out that the rule deprived the parties of their substantive right to contract, and noted that a litigant may not by rule of court ‘ ‘ be deprived of a substantial right, or so embarrassed in its exercise that he may be deprived without his fault of its benefit” (p. 222).
The Michigan statute (§ 27.94) entitled “ Compensation of Attorney; agreement, contingent fees ’ ’ reads in part as follows : (§ 74) “All existing laws, rules and provisions of law restricting or controlling the right of a party to agree with an attorney or counselor for his compensation are repealed, and hereafter the measure of such compensation shall be left to the agreement, express or implied, of the parties ”.
While the rule before us is termed a special rule yet its effect is general upon lawyers operating in a given area in the type of cases referred to. Today it is affecting torts, tomorrow a rule could be made affecting contracts, still later another rule could regulate fees in equity actions. In effect, the power, if such there be, to regulate fees could prove the power to destroy. We have heretofore operated upon the general principle, subject to stated exceptions, that anyone having the legal capacity to contract may employ an attorney. A necessary part of that right is the right to bargain freely for the compensation to be paid. Until the status of attorney-client is reached the parties are dealing at arms length. Where the relation of attorney-client exists it is “highly fiduciary in its nature and of a very delicate, exacting and confidential character, requiring a very high degree of fidelity and good faith ” (5 Am. Jur., Attorneys at Law, § 45, p. 285). If there is overreaching, fraud, mistake, undue influence, or if the contract be unconscionable, it will be held invalid.
It has been held that whether a contract is unconscionable “ is one of fact depending upon the character of the claim *748 and the amount of services to be rendered in prosecuting it to judgment” (Morehouse v. Brooklyn Heights R.R. Co., 185 N. Y. 520, 525).
The Rule in question no longer makes it a question of fact if a particular contract is unconscionable but, in effect, establishes a rule of law that it is if it exceeds the limitations imposed.
Section 474 of the Judiciary Law is definite in its provisions and clear in its language. There is no ambiguity. ‘ ‘ A statute must be read and given effect as it is written by the legislature, not as the court may think-it should or would have been written if the legislature had envisaged all the problems and complications which might arise in the course of its administration ’ ’ (Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639).
People ex rel. Karlin v. Culkin (248 N. Y. 465, 470, supra), cited by defendants, involved the question ‘‘ whether there is power in the Appellate Division to direct a general inquiry into the conduct of its own officers, the members of the bar, and in the course of the inquiry to compel one of its officers to testify as to his acts in his professional relations It was held that there was the power and that it was not limited to cases where specific charges are made against an attorney. The court may act of its own motion where there is sufficient before it, or it may institute an investigation. The court stated further (p. 478) “ The power to inquire imports by fair construction the power to inquire by methods appropriate and adequate ”.
The difficulty here is in trying to equate or identify the power of inquiry or discipline with the power to fix fees. The fixing of fees falls neither in the category of discipline nor of inquiry. Actually the Appellate Division is going beyond the powers conferred by subdivision 2 of section 90 and by this Rule seeking to modify substantive law. We know of no such power in the court.
The argument that the Appellate Division has the power to regulate, or adopt a rule regulating contingent fees under its general supervisory powers over attorneys, seems to raise the question if there be an inherent power to fix or regulate fees. When we speak of “ inherent power ” we speak of “ An authority possessed without its being derived from another; a right, ability or faculty of doing a thing without receiving that right, ability or faculty from another” (43 C. J. S., Inherent, p. 393).
The Legislature, as it properly could, elected to say that the parties might by agreement provide for the fixing of fees. *749 Where it felt the privilege, right or power should be restricted it so stated and made provision therefor. Nothing is found in a study of the statutes which leads us to believe it was intended that the power be exercised concurrently by the Appellate Division, nor can subdivision 2 of section 90 in our opinion, reasonably be construed to confer such power. The power to fix or regulate fees as is done by the Buie certainly is not essential to, or inseparable from the exercise of the powers vested in or conferred upon the Appellate Division by the Constitution and statutes.
‘ ‘ The rules of the old common law and of the civil law relating to the employment of an attorney at law and as to his compensation were never adopted in this state.” (Greenberg v. Remick & Co., 230 N. Y. 70, 72, citing Adams v. Stevens & Cagger, 26 Wend. 451; 7 C. J. S., Attorney and Client, § 160.)
The Appellate Division, as previously pointed out, has the power to adopt or amend any rule of civil practice and to adopt, amend or rescind any special rule for such department not inconsistent with any statute or rule of civil practice ” (Judiciary Law, § 83). Certainly, this can hardly be termed a rule of civil practice, so we ask ourselves if the Bule can be harmonized with section 474 of the Judiciary Law. We think not for the limitation upon the right of contract stated therein reads “ which is not restrained by law ”. The Buie adds another, further and different limitation, and is inconsistent with the right granted.
The case of Erie County Water Auth. v. Western New York Water Co., (304 N. Y. 342) cited by defendants, had to do with the power of a County Court to bar an attorney from appearing in a particular proceeding, it being charged that such attorney violated canon 36 of the Canons of Professional Ethics of the American Bar Association and section 15 of the Public Service Law. Olmsted in a special appearance contended that under section 90 of the Judiciary Law, only the Appellate Division could bar his appearance. The County Court assumed jurisdiction and denied the motion, granting-leave to Olmsted to appear. On appeal, the Appellate Division affirmed the order but on the ground that the County Court had no jurisdiction to grant the motion to disqualify Olmsted. The Court of Appeals affirmed on the same ground by majority opinion. Our attention is directed to that portion of the decision where the court stated ‘ ‘ the Appellate Division of that court has exclusive jurisdiction to say what constitutes professional misconduct on their [the lawyers’] part” (p. 346). It may be observed that there was a particular case or *750 question before the court calling for resolution. It was not the instance of an advance pronouncement imposing’ a limitation upon a statutory right. The court went no further than the case before it and then enunciated again the power to discipline, which is not here disputed.
On the argument the deprivation of liberty and property by the application of the Rule, we like the language of the court in the Thatcher case (115 Utah 568, 575, supra) “ Freedom of contract * * * is a constitutional right which may give birth to, but is not itself, a property right, and * * * is subject to reasonable * * * regulation ”. The right of an individual to contract is a personal liberty. In any social order there are, of course, occasions when that right must be subject to reasonable regulation for liberty is not license.
The issue we are called upon to decide is one of extreme delicacy. We are mindful of the language of a great jurist, Mr. Learned Hand, which we feel appropriate here. And I think we may be forgiven if we take it out of context. In discussing ‘ ‘ enacted law ’ ’, which he defined, he said ‘‘ Courts must reconstruct the past solution imaginatively in its setting and project the purposes which inspired it upon the concrete occasions which arise for their decisions. To interject into that process the fear of displeasure or the hope of favor of those who can make their will felt, is inevitably to corrupt the event, and could never be proposed by anyone who really comprehended the issue ” (Hand, “ The Contribution of an Independent Judiciary to Civilization”).
The history of various attempts to obtain from the Legislature the power for the Appellate Division to regulate contingent fees in personal injury actions, is in itself the expression of a belief by the Bar associations, which Cardozo, J., termed ‘ ‘ the organs of the common will ’ ’ of the Bar, that the power does not now exist in the courts.
Reports, Vol. 65, set D, Association of the Bar of the City of New York, No. 475 (Feb. 14, 1938); Vol. 80, No. 649 (1943); Bronx Bar Association, 1940, Library, Association of the Bar of the City of New York. We are informed that some of the discussions which occurred in the process of seeking legislative actions included members of the judiciary. Men rarely seek that which they possess already.
“ It is a well-recognized rule of statutory construction that it is relevant to consider the history of the times, the circumstances surrounding the passage of the statute, the mischief felt and the objects and remedy in view ” (Bastow, J., in People v. Jelke, 284 App. Div. 211, 223). Applying that prin *751 eiple, we look to the early judicial history of section 474 of the Judiciary Law, tracing it through those periods when it was included in the Code of Civil Procedure, and conclude that it means what it says (see, First Report of the Commissioners on Practice and Pleadings, Code of Procedure, Feb. 29, 1848, (pp. 204-206; Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, Vann, J., the language of which is particularly illuminating, reviewing in some detail the history of the right of an attorney and client to contract for compensation in our State, and the protection afforded counsel).
The effect of the Rule is to inhibit the rights of attorneys and litigants. The vice of the Rule is that it applies only to a segment of a great body, and applies only to those operating in a given area, or under a particular jurisdiction. No valid reason exists for the distinction and the penalty or limitation would seem unwarranted. If there be evils, the source of the right, namely, the Legislature, may in the exercise of its power and discretion correct the same.
Before concluding we should like to express our appreciation for the exhaustive and comprehensive briefs of learned counsel, the Honorables Howard Spellman for the plaintiffs, and Louis Lefkowitz, Attorney-General, by James 0. Moore, Jr., special assistant for the defendants. We are indebted also to the associations and the individual who filed briefs amici curice.
For all of the reasons and upon the grounds and findings heretofore stated and made we are impelled to grant the plaintiffs the relief sought, and conclude that the power exercised does not repose in the Appellate Division. The motion of the plaintiffs for summary judgment is granted. Settle order.