*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2016 UT 21**

IN THE

SUPREME COURT OF THE STATE OF UTAH

INJURED WORKERS ASSOCIATION OF UTAH, et al.,
*Appellants,*

*v.*

STATE OF UTAH,
*Appellee.*

No. 20140372
Filed May 18, 2016

Fifth District, St. George
The Honorable John J. Walton
No. 090501137

Attorneys:

Virginius Dabney, St. George, for appellant

Sean D. Reyes, Att'y Gen., Stanford E. Purser, Asst. Att'y Gen.,
Salt Lake City, for appellee

JUSTICE DURHAM authored the opinion of the Court in which
CHIEF JUSTICE DURRANT and JUSTICE HIMONAS joined.

ASSOCIATE CHIEF JUSTICE LEE filed an opinion concurring in part.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter,
and accordingly did not participate.

JUSTICE DURHAM, opinion of the Court:

**INTRODUCTION**

¶1    In Utah, attorneys representing injured workers in workers'
compensation claims receive their fees out of the compensation
awarded to the worker. By statute, the legislature delegated the
authority to regulate these fees to the Utah Labor Commission. UTAH
CODE § 34A-1-309. The Labor Commission created a sliding-scale fee
schedule and an overall cap on the maximum amount of attorney
fees for attorneys representing injured workers. UTAH ADMIN. CODE
R602-2-4(C)(3).

¶2　The Injured Workers Association of Utah and several of its member attorneys (collectively, IWA) challenge the statute and the Labor Commission's fee schedule as unconstitutional. IWA argues that under the Utah constitution, the Utah Supreme Court is vested with exclusive authority to regulate the practice of law, and that this authority extends to the regulation of attorney fees.

¶3　We agree with IWA and hold that the regulation of attorney fees is included within the power to govern the practice of law. Because the Utah Supreme Court is vested with exclusive inherent and constitutional authority to govern the practice of law—and the court cannot under the separation-of-powers doctrine delegate the regulation of attorney fees to the legislature or the Commission—we hold both the Commission's fee schedule and its authorizing statute unconstitutional.

## BACKGROUND

¶4　The Utah legislature enacted the Workers' Compensation Act in 1917. 1917 Utah Laws 306. The legislature designed this act as a "security system" to compensate workers for their injuries without requiring costly litigation. *See Helf v. Chevron U.S.A., Inc.*, 2015 UT 81, ¶ 84, 361 P.3d 63 (citation omitted). Workers give up common law tort remedies against their employers, and in exchange, employers must compensate workers for workplace injuries regardless of fault. *See* UTAH CODE § 34A-2-105(1); *Shattuck-Owen v. Snowbird Corp.*, 2000 UT 94, ¶ 19, 16 P.3d 555.

¶5　Shortly after promulgating the Workers' Compensation Act, the legislature granted the Industrial Commission "full power to regulate and fix the fee charge" of attorneys involved in workers' compensation cases. 1921 Utah Laws 182. This power now resides with the Labor Commission[1] and is codified in Utah Code section 34A-1-309(1): "In a case before the commission in which an attorney is employed, the commission has full power to regulate and fix the fees of the attorney."

---

[1] The legislature replaced the Industrial Commission with the Utah Labor Commission in 1997, and "the Labor Commission assumed responsibility from the Industrial Commission for the enforcement of Title 34A, the Utah Labor Code." *Rowsell v. Labor Comm'n*, 2008 UT App 187, ¶ 8 n.1, 186 P.3d 968 (citation omitted). Any "caselaw involving the administrative powers of the Industrial Commission remains binding on cases involving the administrative powers of the Labor Commission." *Id.*

¶6    Initially, the Commission created a scheme in which attorneys received a minimum fee of ten dollars, plus 5 percent of the injured worker's award. *See Ellis v. Indus. Comm'n*, 64 P.2d 363, 370 (Utah 1937) (noting the Commission's adoption of this policy on July 21, 1921). Under this policy, the Commission retained discretion to adjust the attorney fee upward or downward if the fee would otherwise be considered unjust to the parties. *Id.* The Commission's scheme affected injured workers' attorney fees only. The Commission has never regulated fees of attorneys representing employers or insurance companies.

¶7    The fee schedule has been adjusted several times since its inception, typically for inflation. Today the regulation grants successful[2] injured workers' attorneys a fee of 25 percent for the first $25,000 of the award, 20 percent for the next $25,000 of the award, and 10 percent of amounts awarded in excess of $50,000. UTAH ADMIN. CODE R602-2-4(C)(3)(a). Beginning in 1991, the Commission also added a cap to the overall fees.[3] Currently, attorneys may not receive fees in excess of $18,590 for "all legal services rendered through final commission action." *Id.* Some additional fees are awarded if the case is appealed. *Id.* R602-2-4(C)(3)(b)–(c). The regulation no longer allows the Commission discretion in awarding fees; the amount of attorney fees awarded depends solely on the size of the judgment.

¶8    IWA petitioned the district court for declaratory judgment, challenging the constitutionality of the Commission's fee schedule and the statute authorizing the Commission to regulate attorney fees. IWA attacked the fee schedule on four grounds, but only the separation of powers argument is at issue on this appeal.[4] IWA

---

[2] An unsuccessful claimant's attorney is entitled to no fees, even if the attorney has contracted with the injured worker at an hourly rate. *See Stokes v. Flanders*, 970 P.2d 1260, 1264 n.8, 1265 (Utah 1998) (holding that the Commission's rule implies that where the pursuit of a claim is unsuccessful, "charging attorney fees on an hourly basis [is] not lawful").

[3] The Commission adjusted the dollar caps on April 5, 1999; January 15, 2002; December 12, 2004; July 24, 2007; February 7, 2008; and December 29, 2011.

[4] IWA did not appeal the district court's rejection of its substantive due process and open courts claims. Although IWA did appeal the equal protection claim, we need not address it here as we rule for IWA on its separation of powers claim.

argues that under our state's constitution, the Utah Supreme Court has the exclusive power to govern the practice of law; the regulation of attorney fees falls within this power; and therefore, any attempt by the legislature to circumvent this power violates the separation of powers doctrine.

¶9    In response, the State cited *Thatcher v. Industrial Commission*, in which this court rejected the notion "that the regulation and fixing of fees of attorneys is essentially and solely the power of the judiciary." 207 P.2d 178, 181 (Utah 1949). The *Thatcher* court recognized this court's inherent power to govern the practice of law, but nonetheless stated it was unaware of any power belonging to this court to regulate attorney fees, ultimately finding it unnecessary "to determine whether the judiciary has the power to regulate or fix fees" because it found that at the very least the legislature had the right to do so. *Id*. at 181–82.

¶10 IWA acknowledged *Thatcher* but argued that the law changed after the 1985 revision of article VIII of the constitution, when the supreme court's power to govern the practice of law became explicit and exclusive. The district court was not persuaded by IWA's argument, determining that

> insofar as the power to regulate the practice of law is concerned, the 1985 amendment did not alter the previous allocation of such power in Utah, but merely "ratified" and stated "expressly" what was previously understood to be inherent. That being the case, there is no basis for concluding that the amendment somehow superseded *Thatcher*'s holding that the Legislature may "giv[e] to the Industrial Commission full power to regulate and fix reasonable fees of attorneys in cases before the commission in which attorneys have been employed."

(citation omitted).

¶11 The district court additionally relied on a comment to rule 1.5 of the Utah Rules of Professional Conduct, which states that "[a]pplicable law may impose limitations on contingent fees, such as a ceiling on the percentage allowable," and may apply in other fee agreements beyond contingency fees. UTAH R. PROF. CONDUCT 1.5 cmt. 3. The court found this comment consistent with the *Thatcher* opinion and its determination that the 1985 amendment did not alter the scope of this court's inherent power to govern the practice of law; accordingly, the court denied IWA's petition at the summary judgment stage.

¶12 On appeal, IWA asks us to strike down the Labor Commission's fee schedule and its enabling statute as a "direct, unconstitutional, circumvention of the Utah Supreme Court's exclusive authority to regulate the practice of law."[5] The constitutionality of a statute presents a question of law. *State v. Candedo*, 2010 UT 32, ¶ 7, 232 P.3d 1008. We review this question for correctness, granting no deference to the lower court's decision. *Id.* We have jurisdiction to decide this appeal pursuant to Utah Code section 78A-3-102(3)(j).

## ANALYSIS

¶13 The separation-of-powers clause in our state constitution describes the three branches of government and specifies that "no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted." UTAH CONST. art. V, § 1. "The latter phrase of this clause establishes that there may be exceptions to the separation-of-powers doctrine, but any exception must be found within the Utah Constitution." *State v. Drej*, 2010 UT 35, ¶ 25, 233 P.3d 476.

¶14 First, we reiterate that under our state constitution, the Utah Supreme Court has plenary authority to govern the practice of law. This authority is derived both from our inherent power and—since 1985—explicit and exclusive constitutional power.

¶15 Second, we determine that the regulation of attorney fees falls squarely within the practice of law, thus invalidating *Thatcher v. Industrial Commission*, 207 P.2d 178 (Utah 1949). Because we cannot delegate the authority to regulate attorney fees in workers' compensation cases to the legislature, both the statute and the Labor Commission's fee schedule are unconstitutional encroachments upon the power of the judiciary to govern the practice of law.

¶16 Third, we set forth the reasons why we decline at this time to adopt our own fee schedule for regulating the fees of injured workers' attorneys.

---

[5] The State raised a motion to strike IWA's reply brief in its entirety because, the State alleges, the reply brief raised new issues. However, because we rule in favor of IWA's separation of power claim (which was raised in their opening brief) and do not reach any other issues, the motion is moot.

## I. THE UTAH SUPREME COURT HAS INHERENT AND CONSTITUTIONAL AUTHORITY TO EXCLUSIVELY GOVERN THE PRACTICE OF LAW

### A. Inherent Authority to Govern the Practice of Law

¶17 Our origin story begins with the inherent power to govern the practice of law. *See Bailey v. Utah State Bar*, 846 P.2d 1278, 1280–81 (Utah 1993) ("From its beginning, this Court has had the inherent power to regulate the practice of law . . . ."). The source of this power flowed from article VIII, section 1 of our state constitution, which vests the "judicial power of the state . . . in a Supreme Court." UTAH CONST. art. VIII, § 1; *accord Gilbert v. Utah Down Syndrome Found., Inc.* (*In re Discipline of Gilbert*), 2012 UT 81, ¶¶ 19–20, 301 P.3d 979 (articulating that "the power to regulate the practice of law was inherent in the judicial power conferred on this Court by article VIII section 1 of the Utah Constitution" (citation omitted)); *In re Utah State Bar Petition for Approval of Changes in Disciplinary Rules on Advert.*, 647 P.2d 991, 992–93 (Utah 1982).

¶18 As part of our inherent authority to govern the practice of law, we have always had the ability to regulate the admission and discipline of attorneys. *See Barnard v. Utah State Bar*, 804 P.2d 526, 528 (Utah 1991) ("[T]he authority of this Court to regulate the admission and discipline of attorneys existed as an inherent power of the judiciary from the beginning."); *In re Burton*, 246 P. 188, 199 (Utah 1926) ("[This court's] power to deal with its own officers, including attorneys, is inherent, continuing, and plenary, and exists independently of statute . . . ."). Even in *Thatcher v. Industrial Commission*—the case we overrule today—we discussed this court's inherent power to regulate the practice of law, including: (1) our "power to provide for the examination, licensing or regulation of admission to the bar of persons seeking to practice law"; (2) the "power to discipline attorneys as officers of the court for unprofessional conduct"; and (3) "the power to determine what is a reasonable [attorney] fee." 207 P.2d 178, 181 (Utah 1949).

¶19 Although the "courts have traditionally regulated the practice of law," *In re Knowlton*, 800 P.2d 806, 808 (Utah 1990), our inherent authority to govern the practice of law was not exclusive. For example, prior to 1981, the Utah Supreme Court and the legislature concurrently governed the Utah State Bar. The legislature "provided for the admission to practice and the discipline and disbarment of attorneys in Utah," while the supreme court had inherent and statutory authority "to establish rules for the admission to practice and the discipline and disbarment of attorneys." *Barnard*, 804 P.2d at 528 (citing Compiled Laws of Utah §§ 317–19, 331 (1917)).

¶20 In 1981, this court "adopted rules for integration of the Bar under the Court's own independent, inherent power derived from the historic and fundamental relationship between attorneys at law and the courts and the doctrine of separation of powers." *Id.* (citing *In re Integration & Governance of the Utah State Bar*, 632 P.2d 845 (Utah 1981)). Those rules "incorporated much of the text of Title 78, chapter 51, the statutes [then] governing the Bar." *Id.* We noted at the time of integration that questions "on the respective functions of the judicial and legislative branches of government in the regulation of attorneys and counselors and the practice of law are left to be resolved in the context of specific cases and controversies." *In re Integration & Governance of the Utah State Bar*, 632 P.2d at 846.

¶21 This sharing of our power to regulate the practice of law ended in 1985 when the constitution was amended to explicitly grant the Utah Supreme Court exclusive power to govern the practice of law.

### B. In 1985, the Supreme Court Was Vested with the Exclusive Constitutional Authority to Govern the Practice of Law

¶22 In 1977, the legislature created a Constitutional Revision Commission (Revision Commission) in order "to make a comprehensive examination of the Constitution of the State of Utah, . . . and thereafter to make recommendations to the governor and the legislature as to specific proposed constitutional amendments designed to carry out the commission's recommendations for changes therein." CONSTITUTIONAL REVISION COMM'N, REPORT TO THE GOVERNOR AND THE 44TH LEGISLATURE 1 (1982) (citation omitted). The Revision Commission found it necessary to completely overhaul article VIII—the judicial article. *See id.* at 14–15.

¶23 Before 1985, the constitution did not expressly provide for this court's rulemaking authority or the power to govern the practice of law. CONSTITUTIONAL REVISION COMM'N, REPORT TO THE GOVERNOR AND THE 45TH LEGISLATURE 19 (1984). This power was inherent and derived from article VIII, section 1. The Revision Commission drafted language that expressly recognized the supreme court's authority to "adopt rules of procedure and evidence" and to "govern the practice of law." *Id.* at 27. The rationale was that

> [m]embers of the commission felt that the rulemaking authority of the supreme court should be specifically included in the constitution. This power is considered essential to the [sic] maintaining an independent judiciary. The revision also provides the supreme court

with clear constitutional authority for the governance of the practice of law. The commission felt that the practice of law is an inherent function of the judiciary.

*Id.*

¶24 Just as our inherent authority to govern the practice of law was not exclusive before 1985, our authority to make rules of procedure and evidence was likewise not exclusive. Before 1943, the supreme court could make procedural rules but the legislature could supersede those rules by statute. *See* Kent R. Hart, Note, *Court Rulemaking in Utah Following the 1985 Revision of the Utah Constitution*, 1992 UTAH L. REV. 153, 154 (1992). In 1943, the "legislature changed course and declared that court rules would override inconsistent legislative enactments." *Id.* By 1951, the legislature "expanded the supreme court's rule-making responsibilities to encompass evidentiary as well as procedural rules." *Id.*

¶25 Section 4 of article VIII—as drafted by the Revision Commission and approved by the voters in 1984—provides that:

> The Supreme Court shall adopt rules of procedure and evidence to be used in the courts of the state and shall by rule manage the appellate process. The Legislature may amend the Rules of Procedure and Evidence adopted by the Supreme Court upon a vote of two-thirds of all members of both houses of the Legislature. . . . The Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law.

UTAH CONST. art. VIII, § 4; *see also In re Discipline of Davis*, 754 P.2d 63, 65 n.6 (Utah 1988).

¶26 Although the constitution permits legislative oversight of the supreme court's rules of procedure and evidence, there is no such limitation on the supreme court's authority to govern the practice of law. And, as specifically articulated in our separation-of-powers clause and jurisprudence, "there may be exceptions to the separation-of-powers doctrine, but any exception must be found within the Utah Constitution." *State v. Drej*, 2010 UT 35, ¶ 25, 233 P.3d 476. Because there is no limitation found within the constitution on our ability to govern the practice of law, we maintain the exclusive authority to do so.

¶27 Our caselaw recognizing this exclusive authority is extensive. *See In re Schwenke*, 2004 UT 17, ¶ 35, 89 P.3d 117 ("[W]e take this opportunity to emphasize that the Utah Constitution is

clear in its pronouncement that this court controls the practice of law. Under article VIII, section 4 of the Utah Constitution, we have the exclusive constitutional mandate to do so."); *Utah State Bar v. Summerhayes & Hayden, Pub. Adjusters*, 905 P.2d 867, 869–70 (Utah 1995) ("This Court has the exclusive authority to regulate the practice of law in Utah."); *Barnard v. Sutliff*, 846 P.2d 1229, 1237 (Utah 1992**)** ("[O]nly this court has the rule-making power over the practice of law and the procedures of the Bar."); *Schwenke v. Smith*, 942 P.2d 335, 336–37 (Utah 1997) ("The Utah Constitution vests sole authority for regulating the practice of law in this court."); *Pendleton v. Utah State Bar*, 2000 UT 96, ¶ 9, 16 P.3d 1230 ("The Utah Constitution grants exclusive power to this court to 'govern the practice of law . . . .'"); *In re Discipline of Harding*, 2004 UT 100, ¶ 18, 104 P.3d 1220 ("[A]ttorney discipline proceedings, being the exclusive province of this court, are conducted under the rules and directions we give.").

¶28   Thus, any pre-1985 case law discussing our shared power to regulate the practice of law with the legislature is no longer valid. *See, e.g.*, *Ruckenbrod v. Mullins*, 133 P.2d 325, 330 (Utah 1943) (noting that the "legislature might make reasonable regulations governing the admission and disbarment of attorneys in the exercise of their police powers and in aid of the court's powers"). The district court relied on this case law to proclaim that "even certain fundamentally judicial power may be exercised to an extent by the Legislature."[6] While this may have been true of our inherent power to govern the practice of law, it has not been the case since the 1985 constitutional

---

[6] The district court cites one case published after the 1985 amendments in support of this proposition—*In re Discipline of McCune*, 717 P.2d 701, 705 (Utah 1986), *abrogated on other grounds by Monson v. Carver*, 928 P.2d 1017 (Utah 1996). In *In re McCune*, this court cites *Ruckenbrod* for the proposition that "[a]lthough the legislature has some power to regulate and control attorneys, at least in certain respects, that power is subject to this Court's *inherent power* to discipline its officers." *Id.* (emphasis added). The court then speaks of the legislature "exercising its pre-1985 authority" to create statutes governing the Bar. *Id.; see also supra* ¶¶ 19–20. The quote from *In re McCune* about our shared power clearly refers to our *inherent power* and not our exclusive constitutional authority to govern the practice of law. Therefore, the quote cannot be read as supporting the district court's statement that even today we still share this power with the legislature.

amendments explicitly granted the supreme court the exclusive power to govern the practice of law.

## II. THE REGULATION OF ATTORNEY FEES FALLS SQUARELY WITHIN OUR EXCLUSIVE JURISDICTION TO GOVERN THE PRACTICE OF LAW

¶29  The "practice of law" is a somewhat elusive term that can be difficult to define, but "is generally acknowledged to involve the rendering of services that require the knowledge and application of legal principles to serve the interests of another with his consent." *Utah State Bar v. Summerhayes & Hayden, Pub. Adjusters*, 905 P.2d 867, 869 (Utah 1995). The practice of law is not limited to services performed before the courts, "but in a larger sense involves counseling, advising, and assisting others in connection with their legal rights, duties, and liabilities." *Id.* at 870.

¶30  Our exclusive authority to regulate the practice of law "includes the power to determine what constitutes the practice of law and to promulgate rules to control and regulate that practice." *Id.* We make these determinations on a case-by-case basis. *See, e.g.*, *id.* (holding that the "practice of third-party adjusting by public adjusters falls clearly within the definition of the practice of law").

¶31  The State contends that the regulation of attorney fees does not fall within the practice of law, relying on *Thatcher v. Industrial Commission*, 207 P.2d 178 (Utah 1949). In *Thatcher*, the plaintiffs argued "that the regulation and fixing of fees of attorneys is essentially and solely the power of the judiciary." *Id.* at 181. But the court did not agree. The court found it "unnecessary at this time to determine whether the judiciary has the power to regulate or fix fees" because it had "no doubt that [the] legislature, under its police powers, has such right in [workers'] compensation cases." *Id.* at 181–82. The court did not address whether the power to regulate attorney fees could be inferred from its inherent power to regulate admission to the Bar or its power to discipline attorneys. *Id.* at 181. Instead, the court opined that "[i]f there is power in the courts to fix a fee scale or regulate fees, it has not been exercised." *Id.* Thus, *Thatcher* did not decide whether this court had the authority to regulate attorney fees. The *Thatcher* court only held that under the version of the Utah Constitution then in effect, the Utah Supreme Court did not have the *exclusive* power to regulate fees.

¶32  But the supreme court was already regulating attorney fees at the time, because the court had the power to determine what a "reasonable" attorney fee is. In fact, *Thatcher* recognized this power and imposed a "duty [upon] the commission by evidence to fix a fee within the zone of reasonableness." *Id.* at 184. The court also outlined

rule 12 of the Revised Rules of the Utah State Bar, which the supreme court approved in 1937. *Id.* at 183–84. This rule is remarkably similar to today's rule 1.5 of the Utah Rules of Professional Conduct. Rule 12 required that in "fixing fees, lawyers should avoid charges which overestimate their advice and services, as well as those which undervalue them. A client's ability to pay cannot justify a charge in excess of the value of the service . . . ." *Id.* at 183 (quoting rule 12 of the Revised Rules of the Utah State Bar). Both rule 12 and today's rule 1.5 lay out several factors that should be taken into consideration when calculating a "reasonable" attorney fee: the time and labor required, the amount involved in the controversy, the contingency or certainty of the compensation, etc. *Id.* at 183–84; UTAH R. PROF. CONDUCT 1.5(a). The *Thatcher* court then required the Commission to determine the zone of reasonableness and that there is enough to show "from evidence adduced as to the reasonable worth of the services rendered that the fee it fixes is within the zone." 207 P.2d at 184. Although the court did not fix the fee in *Thatcher*, it opined that the fee agreed upon between the client and the attorney was "within the range between the highest and lowest reasonableness." *Id.*

¶33 We hold that the regulation of attorney fees falls squarely within the practice of law. It is something we have regulated since before *Thatcher* and continue to regulate today. In rule 1.5, we mandate that a "lawyer shall not make an agreement for, charge or collect an unreasonable fee." UTAH R. PROF. CONDUCT 1.5(a). We have used this rule as a guideline in determining the reasonableness of attorney fees in several cases. *See Dahl v. Dahl*, 2015 UT 79, ¶ 198, ___P.3d___ (holding attorney fees charged were excessive); *Utah State Bar v. Jardine*, 2012 UT 67, ¶ 46, 289 P.3d 516 (determining attorney fees were not excessive); *Cabrera v. Cottrell*, 694 P.2d 622, 625 (Utah 1985) (finding attorney fees to be reasonable even though fees exceeded amount recovered in the contract dispute). Even in *Thatcher*, we recognized that the supreme court is in a better position than an administrative agency to determine the reasonableness of attorney fees. *See* 207 P.2d at 183. Regulating attorney fees goes to the very heart of the practice of law, inasmuch as it involves assessment of the quality, amount, and value of legal services related to a legal problem.

¶34 Therefore, today we decide what *Thatcher* left undecided—that we have the power to regulate and fix attorney fees. Moreover, by vesting the *exclusive* power to govern the practice of law with the supreme court, the 1985 amendment to article VIII, section 4 invalidated *Thatcher*'s holding that the legislature has the authority

to regulate attorney fees.[7] Even if *Thatcher* correctly allowed the legislature to regulate fees at the time it was decided, this decision has been preempted by this court's now exclusive constitutional authority to regulate attorney fees. The fee schedule the legislature has authorized is therefore invalid.

## III. WE DECLINE TO ADOPT A FEE SCHEDULE REGULATING THE FEES OF INJURED WORKERS' ATTORNEYS

¶35 We have determined that the constitutional separation of powers doctrine forbids the legislature from regulating attorney fees. That leaves this court with the responsibility to regulate fees. Although we have the power to adopt a similar scheme, we decline to do so at this time because (1) the policy considerations advanced by the Labor Commission do not seem to outweigh countervailing policy considerations, and (2) attorneys remain bound by rule 1.5 and the other Utah Rules of Professional Conduct—just as in any other case—and therefore may charge only reasonable fees.

### A. *The State Has Not Produced Evidence Showing that the Fee Schedule Actually Protects Injured Workers*

¶36 The Labor Commission created the fee schedule in an attempt to protect "'unsophisticated litigants' with limited bargaining power." Despite good intentions in its adoption, the fee schedule has not been shown to protect workers. Because of the fee limitations and the cap, many attorneys are economically unable or unwilling to take on injured workers' cases. The district court noted that "the collective totals of declined representation among only two [attorney] Plaintiffs to this proceeding equal between 364 and 416 denials to injured workers each year." There is also some evidence that there are now very few attorneys willing to represent injured workers in Utah and injured workers suffer as a result of being unable to obtain representation.

¶37 Not only are injured workers limited in the *quantity* of attorneys willing to take on their cases, they are also limited in the *quality* of the attorneys' work. IWA alleges that the fee schedule results in smaller awards, because attorneys are disincentivized to pursue awards above the capped amount. Attorneys have an incentive to settle once they have reached the capped amount,

---

[7] We stress that this opinion is limited to legislative attempts to regulate the attorney-client relationship. We are not foreclosing the legislature's ability to designate statutory attorney fee awards. *See, e.g.*, *Bilanzich v. Lonetti*, 2007 UT 26, ¶ 11, 160 P.3d 1041 ("Generally, attorney fees are awarded only when authorized by contract or by statute.").

because any work to obtain a larger award for the client will be performed without compensation.

¶38 The fee schedule heretofore in place additionally affects the quality of representation because it exacerbates the differences between worker and employer/insurer in an adversarial setting. While workers' attorneys are strictly limited in fees, and in complex cases may not be able to afford adequate discovery, witnesses, etc., employers and their insurers suffer no such limitations. The legislature originally assumed that this would not be a problem as workers' compensation cases tend to be more straightforward than traditional common-law claims and do not involve questions of fault. But even that lowered burden has not stopped employers and insurers from investing heavily in defense against awards. *See Aldrich, Nelson, Weight & Esplin v. Dep't of Emp't Sec.*, 878 P.2d 1191, 1196 (Utah Ct. App. 1994) (noting that the legislative fee limits on attorneys representing unemployment compensation claimants can be unfair and inflexible "even in the face of extenuating circumstances").

¶39 We are persuaded at this time that the absence of a fee schedule will allow injured workers the flexibility to negotiate appropriate fees with their attorneys. For very simple cases, the attorney and injured worker can negotiate a small fee, perhaps even less than that mandated by the current fee schedule. For more complex cases, the attorney and injured worker can come up with an appropriate fee that will not cause the lawyer to lose money by taking on the case and will still give the injured worker the representation needed to receive an adequate award. Fears about unscrupulous attorneys preying upon unsophisticated injured workers are exaggerated, as attorneys are still constrained by rules of professional conduct.

### B. Attorneys Remain Bound by the Rules of Professional Conduct and May Be Disciplined for Violations of These Rules

¶40 The preamble to the Utah Rules of Professional Conduct explains that

> A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Every lawyer is responsible to observe the law and the Rules of Professional Conduct, shall take the Attorney's Oath upon admission to the practice of law, and shall be subject to the Rules of Lawyer Discipline and Disability.

This court "has delegated to the Office of Professional Conduct ('OPC') the responsibility of investigating allegations that an attorney has violated the Rules of Professional Conduct." UTAH STATE BAR, UTAH STATE BAR OFFICE OF PROFESSIONAL CONDUCT, http://utahbar.org/opc [https://perma.cc/H7ME-GNHQ] (last visited May 6, 2016). If the OPC has determined a violation has occurred, then the OPC will prosecute "in accordance with the Rules of Lawyer Discipline and Disability." *Id.* As outlined *supra* in Part II, rule 1.5 of the Rules of Professional Conduct requires attorneys to charge a reasonable attorney fee in all cases. Attorneys that violate this rule may be subject to sanctions.

¶41 In *Dahl v. Dahl*, for example, we held that the attorney violated rule 1.5 by charging an unreasonable fee. 2015 UT 79, ¶ 206, ___P.3d___. We recognized that when "an attorney proceeds competently, but nonetheless is unsuccessful for his client, we ascribe no error. But when an attorney consistently fails to perform basic skills in a competent manner, and the client is harmed as a result, we will not allow that attorney to collect patently unreasonable fees." *Id.* We thus invalidated the attorney's fee agreement with his client and referred the attorney to the OPC for disciplinary proceedings. *Id.* ¶ 213.

¶42 We are therefore persuaded that injured workers are adequately safeguarded by current rules against attorneys preying on their awards and charging unreasonable fees. We therefore decline to enact a fee schedule at this time.

## CONCLUSION

¶43 Our state constitution explicitly grants the supreme court the exclusive authority to govern the practice of law. The regulation of attorney fees undoubtedly falls within the practice of law. Although we have power to delegate this authority to the Bar and maintain supervisory oversight, we cannot delegate the power to govern the practice of law to the legislature or the Labor Commission. This would violate the separation-of-powers clause because the ability to delegate this authority to another branch of our state government is not "expressly directed or permitted" in the text of the Utah constitution. UTAH CONST. art. V, § 1; *State v. Drej*, 2010 UT 35, ¶ 25, 233 P.3d 476.

¶44 Utah Code section 34A-1-309 and Utah Administrative Code R602-2-4(C)(3) violate both article VIII, section 4 and article V, section 1 of our state constitution, and are therefore invalid encroachments upon the powers of the judiciary.

ASSOCIATE CHIEF JUSTICE LEE, concurring in part:

¶45  I agree with the court that the constitution grants the power to regulate attorney fees only to this court and not to the labor commission. And I concur in the majority opinion in full to the extent of its analysis on that issue.

¶46 I cannot agree with the court's analysis in Part III(A), however. There the court "decline[s]" to "adopt" a fee schedule similar to that endorsed by the labor commission. *Supra* ¶ 35. And it does so on the basis of its conclusions that the record shows that "there are now very few attorneys willing to represent injured workers in Utah" under the schedule adopted by the labor commission and that that schedule has also affected "the quality of representation" afforded by counsel. *Supra* ¶¶ 36, 38.

¶47  The question of whether to adopt such a fee schedule is not properly presented for our consideration. We have not been formally asked to adopt our own fee schedule for regulating the fees of injured workers' attorneys through our rulemaking power. And there is little or no evidence in the record to support the court's conclusions regarding the policy pros and cons of such a schedule. For these reasons I would analyze only the question of the labor commission's authority to promulgate a fee schedule; I would not offer an advisory basis for rejecting a hypothetical request that is not before us.