Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0272

_____

### Tracia Carter-Shepherd

### v.

### Royal Furniture Company and State of Alabama

### Appeal from Jefferson Circuit Court
### (CV-22-900008)


FRIDY, Judge.

Tracia Carter-Shepherd ("the employee") appeals from a judgment of the Jefferson Circuit Court ("the trial court") insofar as it denies her constitutional challenges to certain portions of the Alabama Workers'

Compensation Act ("the Act"), Ala. Code 1975, § 25-5-1 et seq. We affirm the trial court's judgment.

Procedural History

On January 3, 2022, the employee filed in the trial court a complaint against Royal Furniture Company ("the employer") in which she sought workers' compensation benefits under the Act. On September 24, 2024, the parties filed and submitted to the trial court a petition to approve a settlement agreement that had been reached by the parties; a copy of the settlement agreement was attached to the petition and provided, among other things, that the parties agreed that the employer would pay to the employee a lump-sum amount of $50,000 in settlement of her claims against the employer and that the employee's attorney "is entitled to a fee of the above referenced lump-sum settlement to be determined by [the trial court], plus any expenses incurred as a result of this litigation." The settlement agreement further represented that the lump-sum payment, "after reduction of attorney fees and expenses incurred, leave[s] a balance of $42,184.14 to be paid to [the employee]." On September 25, 2024, the trial court entered a judgment in which it, among other things, "approve[d] the proposed settlement and the

2

proposed attorney's fee for [the employee's] attorney" and entered judgment in accordance with the terms of the settlement agreement and the petition the parties had filed.

On September 25, 2024, the employee filed a motion[1] requesting that the trial court award her attorney a fee in the amount of 16% of the gross settlement proceeds and that it do so by holding Ala. Code 1975, § 25-5-90(a), a part of the Act, unconstitutional.[2] On October 8, 2024, the employee filed an amended motion in which she also challenged as

---

[1]The employee's motion indicates that the motion was brought by the employee, "by and through counsel, and her counsel undersigned on their own behalf." We note that there is no indication that the employee's counsel sought to be added as a plaintiff or that the employee's counsel was added as a plaintiff in the trial court; nor has the employee's counsel attempted to appeal the trial court's judgment as an appellant.

[2]Section 25-5-90(a) provides:

"Unless otherwise provided in [the Act], no part of the compensation payable under [Article 3] and Article 4 of [the Act] shall be paid to an attorney for the plaintiff for legal services, unless upon the application of the plaintiff, the judge shall order or approve of the employment of an attorney by the plaintiff; and in such event, the judge, upon the hearing of the complaint for compensation, either by law or by settlement, shall fix the fee of the attorney for the plaintiff for his or her legal services and the manner of its payment, but the fee shall not exceed 15 percent of the compensation awarded or paid."

unconstitutional the Act's nonseverability statute, Ala. Code 1975, § 25-5-17.[3] The State's Attorney General was served with the amended motion, and, on October 30, 2024, the State's Attorney General filed a brief defending the constitutionality of the Act. See Ala. Code 1975, § 6-6-227 (providing, in pertinent part, that, "[i]f the statute … is alleged to be unconstitutional, the Attorney General of the state shall … be served with a copy of the proceeding and be entitled to be heard"). The employer also filed a response in opposition to the employee's motion seeking to hold § 25-5-90(a) unconstitutional. On January 15, 2025, the employee filed a reply brief in support of her amended motion. On March 21, 2025, following a hearing,[4] the trial court entered a judgment in which it concluded that the employee "has not carried her burden of proving that the fee cap in the … Act is unconstitutional" and that, "[c]onsequently, [the employee's] further arguments that the 'non-severance' clause in the

_____

[3]Section 25-5-17 provides: "The provisions of [the Act] are expressly declared not to be severable. If any provision of [the Act] shall be adjudged to be invalid by any court of competent jurisdiction, then this entire act shall be invalid and held for naught."

[4]A transcript of the March 21, 2025, hearing does not appear in the record on appeal. The employee indicated on her notice of appeal that she would not order a transcript.

4

… Act is unconstitutional are rendered moot." On April 14, 2025, the employee filed her notice of appeal to this court.

Issues

The employee argues on appeal that § 25-5-17 is unconstitutional because it violates the right to petition secured by the First Amendment to the United States Constitution and that the legislative cap on attorney's fees in § 25-5-90(a) violates the doctrine of separation of powers set forth in the Alabama Constitution of 2022.

Standard of Review

In Crenshaw v. Sonic Drive In of Greenville, Inc., [Ms. SC-2024-0081, Dec. 6, 2024] ___ So. 3d ___, ____ (Ala. 2024), our supreme court stated, in pertinent part:

> "Initially, we note that 'acts of the legislature are presumed constitutional.' State ex rel. King v. Morton, 955 So. 2d 1012, 1017 (Ala. 2006). '"In reviewing the constitutionality of a legislative act, this Court will sustain the act '"unless it is clear beyond reasonable doubt"'"' that the act violates the constitution. Id. (quoting Dobbs v. Shelby Cnty. Econ. & Indus. Dev. Auth., 749 So. 2d 425, 428 (Ala. 1999), quoting in turn White v. Reynolds Metals Co., 558 So. 2d 373, 383 (Ala. 1989), quoting in turn Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9, 18 So. 2d 810, 815 (1944))."

Discussion

We first address the employee's argument that the fee cap imposed by § 25-5-90 is unconstitutional because it violates the separation-of-powers doctrine. Article III, § 42, of the Alabama Constitution of 2022 provides:

> "(a) The powers of the government of the State of Alabama are legislative, executive, and judicial.
>
> "(b) The government of the State of Alabama shall be divided into three distinct branches: legislative, executive, and judicial.
>
> "(c) To the end that the government of the State of Alabama may be a government of laws and not of individuals, and except as expressly directed or permitted in this constitution, the legislative branch may not exercise the executive or judicial power, the executive branch may not exercise the legislative or judicial power, and the judicial branch may not exercise the legislative or executive power."

The employee argues that the regulation of attorney's fees is a function of the judicial branch of government and that § 25-5-90 constitutes a legislative trespass into a function reserved to the judiciary.

Before we proceed to consider the merits of the employee's constitutional arguments, we first address a jurisdictional argument raised by the Attorney General. The Attorney General argues on appeal that the employee lacks standing to challenge the fee cap. We note that

6

the issue of standing was not raised before the trial court in this case and was not addressed by that court; however, "'[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation.'" State v. Property at 2018 Rainbow Drive, 740 So. 2d 1025, 1028 (Ala. 1999) (citations omitted). Our supreme court has acknowledged that, to establish standing to bring a challenge on constitutional grounds, a party must first demonstrate the existence of "'an actual, concrete and particularized "injury in fact" -- "an invasion of a legally protected interest."'" Town of Cedar Bluff v. Citizens Caring for Children, 904 So. 2d 1253, 1256-57 (Ala. 2004) (quoting Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, LLC, 890 So. 2d 70, 74 (Ala. 2003)) (emphasis omitted). The Attorney General contends that, in the present case, the employee is not injured by the imposition of the fee cap in § 25-5-90, which, he says, operates to ensure the employee a larger percentage of the settlement amount than she will receive if the fee cap is declared unconstitutional.

The employee asserts in her reply brief that the fee cap forbids her from "acting as she wishes" to pay a lawyer "what she wishes" and that it therefore affects her right to contract privately for legal representation.

7

See Article I, § 22, Ala. Const. 2022 (providing, in pertinent part, that no law impairing the obligations of contracts shall be passed by the legislature); Ex parte McCain, 804 So. 2d 186, 189 (Ala. 2001) (recognizing that "[t]he right to appear through privately retained counsel in a civil matter is embedded in Article I, § 10, Ala. Constitution, 1901," and that that "'constitutional right to be represented by counsel … cannot be unduly impinged'" (quoting Loreno v. Ross, 222 Ala. 567, 570, 133 So. 251, 253 (1931))).

In Goodyear Tire & Rubber Co. v. Moore, 900 So. 2d 1239, 1240 (Ala. Civ. App. 2004), this court confirmed that an employer in a workers' compensation case has no standing to obtain review of the calculation of the attorney's fee awarded to the worker's attorney because it pays no portion thereof. In Rush v. Heflin, 411 So. 2d 1295, 1297 (Ala. Civ. App. 1982), this court recognized that, if an attorney's fee was awarded that exceeded the amount allowed by the Act, "it is a matter for correction between the employee and his attorney." Thus, this court has acknowledged that § 25-5-90 relates to the contractual relationship between an employee proceeding under the Act and his or her attorney. We cannot conclude that, under the circumstances of the present case, in

8

which the employee requested an order awarding her attorney a certain amount pursuant to that relationship and in which that requested order was prohibited by the operation of § 25-5-90, the employee lacks standing to challenge that statute. Accordingly, we proceed to consider the merits of the employee's constitutional challenge to § 25-5-90.

The employee argues that § 25-5-90 violates § 42 by permitting the legislative branch of the government to usurp the authority of the judicial branch to regulate lawyers and the legal profession, including the reasonableness of attorney's fees. To establish the judicial branch's authority in that regard, the employee first cites Ala. Const. 2022, Art. VI, § 150, which provides:

> "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."

In further support of her argument that regulating attorney's fees is a function of the judicial branch, the employee cites Diamond Concrete & Slabs, LLC v. Andalusia-Opp Airport Authority, 181 So. 3d 1071 (Ala.

9

Civ. App. 2015), in which this court addressed the reasonableness of an attorney's fee awarded pursuant to Ala. Code 1975, § 8-29-6, which provides for the "payment of reasonable attorneys' fees" in cases involving remedies for contractors and subcontractors to recover payments that are improperly withheld by a party contractually obligated for the payment. 181 So. 3d at 1074-75. In that case, this court confirmed that the determination of whether an attorney's fee was reasonable was within the sound discretion of the trial court, and we outlined the criteria that a trial court might consider in reaching its determination on that issue. Id. at 1075. The employee asserts that, in Diamond Concrete, "although the legislature statutorily authorized that a fee could be awarded, regulating the amount of the fee was seen clearly as a function of the judiciary." The employee's brief, p. 37. We note, however, that, in Diamond Concrete and other cases cited by the employee in support of that assertion, the legislature statutorily authorized the award of a "reasonable" attorney's fee, and the judiciary was charged with determining whether, under the circumstances involved in each of those cases and in consideration of certain relevant

factors, the award was reasonable, in accordance with the language of the applicable statute.

Unlike the statutes at issue in the cases cited by the employee, § 25-5-90 does not provide for the award of a "reasonable attorney's fee." We note, however, that, like in Diamond Concrete, in which this court confirmed that the question whether the fee awarded was reasonable was within the trial court's discretion, "[t]he trial court has broad discretion in awarding an attorney fee in a workers' compensation case so long as the award does not exceed 15% of the compensation awarded or paid." Osorio v. K & D Erectors, Inc., 882 So. 2d 347, 351 (Ala. Civ. App. 2003). Thus, we cannot conclude that the discretionary function of the judiciary in awarding an attorney's fee is negated in workers' compensation cases by the application of § 25-5-90. Indeed, the employee acknowledges on appeal that judicial discretion is involved in the application of § 25-5-90. She asserts, however, that limits placed on that discretion by imposing the 15% cap could, in certain circumstances, limit the judiciary's ability to award a "reasonable fee." She cites in support of her assertion Castellanos v. Next Door Co., 192 So. 3d 431, 433 (Fla. 2016), in which the Florida Supreme Court declared a legislatively imposed fee cap in

workers' compensation cases unconstitutional on the basis that it violated due process, as being illustrative of a situation in which a fee cap may result in the award of an unreasonable fee.

In Castellanos, the Florida statute at issue limited a claimant's ability to recover attorney's fees to an amount on a sliding scale based on the amount of the workers' compensation benefits obtained and resulted in an award to the worker's attorney in that case of a fee in the amount of $1.53 per hour for 107.2 hours of work. 192 So. 3d at 433. Notably, under the Florida workers' compensation laws at issue in Castellanos, the workers' compensation claim was adjudicated by the Judge of Compensation Claims, an official of Florida's executive branch of government, and the fees were to be paid by the employer. Id. at 437. The Florida Supreme Court concluded that the statute in that case created an unconstitutional, irrebuttable presumption in violation of due process of law. Id. Unlike in Castellanos, however, the employee in the present case has voluntarily abandoned on appeal any arguments in support of a due-process challenge against § 25-5-90. Thus, we cannot conclude that the legal conclusions in Castellanos are informative in our consideration of the present appeal.

Moreover, the employee in the present case failed to present any assertions of fact or arguments either to the trial court or to this court indicating that the award of attorney's fees to her attorney within the 15% cap imposed by § 25-5-90 is unreasonable under the circumstances presented in this case. Thus, her arguments that the fee cap could create a situation like that presented in Castellanos do not merit a finding that § 25-5-90 is unconstitutional, either on its face or as applied to her, based on that possibility. See Weldon v. Ballow, 200 So. 3d 654, 659 (Ala. Civ. App. 2015) (acknowledging the difference between an "as applied" constitutional challenge to a statute, which is based on the facts of a particular case, and a "facial" constitutional challenge to a statute, which is based on whether the statute is always unconstitutional, regardless of the particular facts).

The employee also points to the Alabama Rules of Disciplinary Procedure and the Alabama Rules of Professional Conduct in support of her assertion that it is the unique role of the judiciary to regulate the legal profession, including the reasonableness of attorney's fees. She cites the Preamble to the Alabama Rules of Disciplinary Procedure, which provides, among other things, that the "Supreme Court of Alabama has

inherent responsibility to supervise the conduct of lawyers who are its officers" and that the "purpose of lawyer discipline and disability proceedings is to maintain appropriate standards of professional conduct to protect the public and the administration of justice from lawyers who have demonstrated … that they are unable or are likely to be unable to properly discharge their professional duties." The Alabama Rules of Disciplinary Procedure provide, among other things, that discipline may be imposed for violation of the Alabama Rules of Professional Conduct. Rule 2(b), Ala. R. Disc. P. The employee also cites Rule 1.5(a) of the Alabama Rules of Professional Conduct, which provides, in pertinent part, that "[a] lawyer shall not enter into an agreement for, or charge, or collect a clearly excessive fee" and provides factors to consider in determining whether a fee is excessive. She argues that those rules support a finding that § 25-5-90 interferes with the judiciary's regulation of attorney's fees.

The Supreme Court of Kansas was presented with a similar argument in Injured Workers of Kansas v. Franklin, 262 Kan. 840, 876, 942 P.2d 591, 616 (1997), when it considered whether the provision in the Kansas Workers' Compensation Act that allowed for graduated

14

contingency-fee rates for attorneys representing injured workers interfered with the Kansas Supreme Court's inherent power to regulate the practice of law. That court disposed of the argument that the limit on the contingency fees at issue conflicted with the judicial power to regulate attorney's fees, thereby violating the separation-of-powers doctrine, by concluding that the Kansas Rules of Professional Conduct allow for the statutory regulation of contingency fees and are thereby consistent with a statute that limits contingency-fee rates. 262 Kan. at 876, 942 P.2d at 616. We reach a similar conclusion.

In the present case, the employee notes that, although the Alabama Rules of Professional Conduct are drafted by the Board of Commissioners of the Alabama State Bar, see Ala. Code 1975, § 34-3-80, those rules "shall not be effective until approved by the Supreme Court." Ala. Code 1975, § 34-3-81. The employee must concede then that the Alabama Supreme Court approved Rule 1.5(c) of the Alabama Rules of Professional Conduct, which provides, in pertinent part, that "[a] fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law." (Emphasis added.) Thus, the Alabama Supreme Court

15

approved that portion of those rules that explicitly acknowledges that laws may prohibit a contingent attorney's fee. The Editors' Notes accompanying Rule 1.5 provide that "[a]pplicable law may impose limitations on contingent fees, such as a ceiling on the percentage." See Scope of the Alabama Rules of Prof'l Conduct (providing that the "[c]omment accompanying each Rule explains and illustrates the meaning and purpose of the Rule"). Thus, a statute like § 25-5-90 that regulates or limits contingency-fee rates is consistent, and does not conflict, with the judicial regulation of attorney's fees in the Alabama Rules of Professional Conduct.

We note that a case cited by the employee on appeal -- Injured Workers Association of Utah v. State, 374 P.3d 14 (Utah 2016) -- reached a different conclusion than this court and the Supreme Court of Kansas in Injured Workers of Kansas v. Franklin, despite a comment to Rule 1.5 of the Utah Rules of Professional Conduct that also indicated that applicable law may impose limitations on attorney contingency fees. In that case, the Supreme Court of Utah concluded that a sliding-scale fee schedule and an overall cap on the maximum amount of attorney's fees for attorneys representing injured workers that was created by the Utah

Labor Commission, a body of the executive branch of Utah's state government, and the authorizing statute that delegated the authority to regulate those fees to the Utah Labor Commission, were unconstitutional. 374 P.3d at 16. In reaching that conclusion, the Supreme Court of Utah first acknowledged that the Constitution of the State of Utah granted that court the exclusive authority to govern the practice of law. Id. at 20. It then overruled Thatcher v. Industrial Commission, 115 Utah 568, 207 P.2d 178 (1949), in which that same court had previously concluded that, "under the version of the Utah Constitution then in effect, the Utah Supreme Court did not have the exclusive power to regulate [attorney's] fees." 374 P.3d at 21. The Utah Supreme Court proceeded to conclude that "the regulation of attorney fees falls squarely within the practice of law" such that the constitutional separation-of-powers doctrine forbids the legislature from regulating attorney's fees and that the fee schedule authorized by the legislature and created by the Utah Labor Commission was invalid. Id. at 22.

The Utah Supreme Court acknowledged its own power to adopt a scheme regulating attorney's fees and proceeded to consider certain policy considerations presented by the Labor Commission in support of

the adoption of a fee schedule. <u>Id.</u> at 22-23. The employee in the present case recites portions of those policy considerations in her brief on appeal. Those statements by the Utah Supreme Court are not instructive in the present case, however. Unlike in the Utah case, the employee fails to point to any portion of the Alabama Constitution that grants the Alabama Supreme Court exclusive authority to regulate the practice of law such that this court could consider the separation-of-powers analysis in that case instructive or could proceed to consider the merits of a fee schedule as the Utah Supreme Court did in <u>Injured Workers Association of Utah v. State</u>. Indeed, the "Power to Make Rules" in Art. VI, § 150, of the Alabama Constitution of 2022 specifically provides that the rules outlined therein "may be changed by a general act of statewide application."

The employee also cites in support of her constitutional arguments <u>Irwin v. Surdyk's Liquor</u>, 599 N.W.2d 132 (Minn. 1999), in which the Supreme Court of Minnesota declared unconstitutional a statutory scheme providing a set formula for attorney's fees, with a maximum amount of $13,000. In that case, the Supreme Court of Minnesota recognized that the rules governing the legal profession fall within the

judicial power exclusively reserved to the court and that, even if it were to read the statutory scheme at issue in that case as allowing review by that court, its review power would be limited to solely determining whether the statutory formula had been properly applied by the compensation judge, a member of the executive branch who hears workers' compensation claims, and the Workers' Compensation Court of Appeals, an independent agency of the executive branch with exclusive jurisdiction to hear all appeals allowed under the Minnesota Workers' Compensation Act, see Minn. Stat. § 175A.01. 599 N.W. 2d at 140-41. Ultimately, the Minnesota Supreme Court noted that it did "not take issue with the actual percentage or dollar limitations adopted by the legislature" in the workers' compensation scheme, but it concluded that "[l]egislation that prohibits [it] from deviating from the precise statutory amount of awardable attorney fees impinges on the judiciary's inherent power to oversee attorneys and attorney fees by depriving [it] of a final, independent review of attorney fees" and that the legislative delegation of attorney-fee regulation exclusively to the executive branch of government violated the Minnesota Constitution's separation-of-powers doctrine. Id. at 141-42.

The employee cites <u>Goodyear Tire & Rubber Co. v. J.M. Tull Metals Co.</u>, 629 So. 2d 633, 637 (Ala. 1993), for the proposition that the Act "is based on the Minnesota act and that 'the Minnesota construction of [the Minnesota act] is of persuasive value to this court.'" The employee's brief, p. 26. Our supreme court responded to a similar assertion in <u>Ex parte Woodward Iron Co.</u>, 277 Ala. 133, 136, 167 So. 2d 702, 704 (1964), by acknowledging that "the procedure under Minnesota statutes is different from ours in many respects." Unlike the Minnesota statutory scheme at issue in <u>Irwin</u>, Alabama's statutory scheme does not provide that workers' compensation claims are heard by members of the executive branch and contains no formula to be applied to calculate attorney's fees. As discussed above, the employee has failed to point to a provision of our laws that exclusively reserves the power to create rules governing the legal profession to the judiciary. Thus, we do not find <u>Irwin</u> of significant persuasive value in this case.

No more persuasive is the employee's citation to Pennsylvania caselaw analyzing Pennsylvania's medical-malpractice laws. Indeed, in <u>Seitzinger v. Commonwealth</u>, 25 A.3d 1299, 1304-06 (Pa. Commw. Ct. 2011), the Commonwealth Court of Pennsylvania concluded that a

20

statute that placed a 20% ceiling on contingency fees that attorneys could claim in workers' compensation proceedings did not violate the separation-of-powers doctrine, largely based on the Pennsylvania Supreme Court's approval of that portion of Rule 1.5 of Pennsylvania's Rules of Professional Conduct that is the same as Alabama's Rule 1.5(c), cited above. That court also concluded that the challenges to the statutory scheme in that case were facial in character, and that the provision at issue did not conflict with the Pennsylvania Supreme Court's rule permitting reasonable attorney's fees in general, but that, in application, the ceiling on attorney's fees may provide for reasonable fees as that concept was reflected in Rule 1.5 of the Pennsylvania Rules of Professional Conduct. 25 A.3d at 1307.

Like in Seitzinger, in the present case, the employee does not present any argument indicating that § 25-5-90, as applied, operates in a manner that impinges upon the judiciary's right to regulate attorney's fees. Moreover, our supreme court has acknowledged the legislature's right, under its police power, to regulate attorney's fees pursuant to the Act. In Woodward Iron Co. v. Bradford, 206 Ala. 447, 450-51, 90 So. 803, 805 (1921), our supreme court denied a challenge to the constitutionality

21

of the fee cap in a predecessor to the Act; it concluded that, because the workers' compensation act at that time was not mandatory and the parties had elected to operate under and abide by that act, they had waived the right to any constitutional objections to the fee cap therein. It stated also, however: "[W]e do not mean to hold, if this act was mandatory instead of elective, that the state would not have the right, under its police power, to regulate the attorney's fees under same." 206 Ala. at 451, 90 So. at 805. The employee asserts that that statement in Woodward amounts only to dicta. The supreme court in Woodward cited in support of its statement, however, Boone v. State, 170 Ala. 57, 63, 54 So. 109, 111 (1911), in which the Alabama Supreme Court stated, in pertinent part:

> "It is the established doctrine of the Supreme Court of the United States, the final authority on the subject, that the liberty of contract is not universal, and is subject to restrictions passed by the Legislature in the exercise of its power to protect the safety and welfare of the people. There are manifold restraints to which every person is subject for the common good. Jacobson v. Massachusetts, 197 U.S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643 [(1905)]; Williams v. Arkansas, 217 U.S. 79, 30 Sup. Ct. 493, 54 L. Ed. 673 [(1910)]. In Frisbie v. United States, 157 U.S. 160, 15 Sup. Ct. 586, 39 L. Ed. 657 [(1895)], the court says: 'It is within the undoubted power of government to restrain some individuals from all contracts, as well as all individuals from some contracts. It may deny to all the right to contract for the purchase of lottery tickets; to the minor the right to assume any obligations, except for the necessaries of existence; to the common carrier the power to

22

make any contract releasing himself from negligence; and, indeed, may restrain all engaged in any employment from any contract in the course of that employment which is against public policy. The possession of this power by government in no manner conflicts with the proposition that, generally speaking, every citizen has a right freely to contract for the price of his labor, services, or property.'"

Thus, our supreme court outlined the police power of the legislature.

Our supreme court also applied the police power in upholding that portion of the predecessor to the Act addressing attorney's fees in Chapman v. Railway Fuel Co., 212 Ala. 106, 101 So. 879 (1924). It stated, in pertinent part:

"Nor do we find reason to declare the act violative of the free right to contract, in that it provides that no part of the compensation payable thereunder shall be paid to attorneys except with the approval of the court; or because it arbitrarily fixes compensation without regard to the extent of the injury suffered by the employee; or because it limits the amount to be recovered for medical attention; or because it denies remedy or compensation for two weeks immediately next after the injury, which it does not do except in cases in which disability lasts for less than four weeks -- all of which propositions are asserted rather than argued in the brief. The following considerations justifying acts of this character under the police power were stated in [a headnote to Jensen v. Southern Pacific Co., 215 N.Y. 514, 109 N.E. 600 (1915)]:

"'It protects both employer and employee, the former from wasteful suits and extravagant verdicts, the latter from the expense, uncertainties, and delays of litigation in all cases,

23

and from the certainty of defeat if unable to establish a case of actionable negligence.'"

212 Ala. at 109, 101 So. at 881.

In Sokoll v. Humphrey, Lutz & Smith, 337 So. 2d 362, 364 (Ala. Civ. App. 1976), this court acknowledged that the fee cap in the predecessor to the Act had been upheld against constitutional attack in both Woodward and Chapman. Additionally, this court stated, in pertinent part:

> "Limitation of attorneys' fees in workmen's compensation cases has also been upheld as a valid exercise of the police power by the United States Supreme Court in Yeiser v. Dysart, 267 U.S. 540, 69 L. Ed. 775, 45 S. Ct. 399 [(1925)]. See also 159 ALR 912, 926; and 7 Am. Jur. 2d Attorneys at Law § 252.

> "Fee-limitation in workmen's compensation cases exists for reasons well stated in Larson, The Law of Workmen's Compensation, § 83.11, as follows:

>> "'When, however, this practice [the rule that one pays one's own legal fees as attorney and client may contract] is superimposed upon a closely calculated system of wage-loss benefits, a serious question arises whether the social objectives of the legislation may to some extent be thwarted. The benefit scales are so tailored as to cover only the minimum support of the claimant during disability. There is nothing to indicate that the framers of the benefit rates included any padding to take care of legal and other expenses incurred in obtaining the award.'

24

"As the United States Supreme Court stated through Justice Holmes in <u>Yeiser v. Dysart</u>, <u>supra</u>:

"'The Court adverts to the fact that a large proportion of those who come under the statute have to look to it in case of injury and need to be protected against improvident contracts, in the interest not only of themselves and their families but of the public. ...' ([267 U.S. at 541,] 45 S. Ct. at 400)."

337 So. 2d at 364-65.

In consideration of the above cases and our supreme court's approval of the language in Rule 1.5 of the Alabama Rules of Professional Conduct, we cannot conclude that § 25-5-90 is unconstitutional as violative of the separation-of-powers doctrine. Rather, it appears to this court that the limitation on attorney's fees in § 25-5-90 amounts to a valid exercise of the legislature's police power that is consistent with the judiciary's authority to make and promulgate rules governing the administration, practice, and procedure in all courts. We therefore affirm the trial court's judgment insofar as it declined to hold § 25-5-90 unconstitutional.

The employee also argues that § 25-5-17 is unconstitutional. As the basis for her argument, the employee asserts that, if she were successful in invalidating § 25-5-90, she would risk losing the entire remedy

afforded to her by the Act for any future work injury based on the nonseverable nature of the Act. The Attorney General argues in response that, because the employee failed to establish that § 25-5-90 is unconstitutional, her challenge to § 25-5-17 is moot. We agree.

> "'"'A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned.'" Case v. Alabama State Bar, 939 So. 2d 881, 884 (Ala. 2006) (quoting American Fed'n of State, County & Mun. Employees v. Dawkins, 268 Ala. 13, 18, 104 So. 2d 827, 830-31 (1958)). "The test for mootness is commonly stated as whether the court's action on the merits would affect the rights of the parties." Crawford v. State, 153 S.W.3d 497, 501 (Tex. App. 2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1993)). "A case becomes moot if at any stage there ceases to be an actual controversy between the parties." Id. (emphasis added) (citing National Collegiate Athletic Ass'n v. Jones, 1 S.W.3d 83, 86 (Tex. 1999)).

> "'... "A moot case lacks justiciability." Crawford, 153 S.W.3d at 501. Thus, "[a]n action that originally was based upon a justiciable controversy cannot be maintained on appeal if the questions raised in it have become moot by subsequent acts or events." Case, 939 So. 2d at 884 (citing Employees of Montgomery County Sheriff's Dep't v. Marshall, 893 So. 2d 326, 330 (Ala. 2004)).'"

K.L.R. v. K.G.S., 201 So. 3d 1200, 1203 (Ala. Civ. App. 2016) (quoting Chapman v. Gooden, 974 So. 2d 972, 983-84 (Ala. 2007)).

The employee argues that, even if § 25-5-90 is not held to be unconstitutional, the constitutionality of § 25-5-17 is due to be considered pursuant to her assertion that it violates the "right to petition" in the First Amendment to the United States Constitution. The employee's reply brief, p. 9. We note, however, that the basis of her argument on this issue is that anyone who <u>successfully</u> exercises his or her right to petition by challenging any portion of the Act is denied the remedies of the remaining portions of the Act. The employee's challenge to § 25-5-90 having failed, her challenge to the constitutionality of § 25-5-17 is merely abstract; no real controversy remains. <u>See</u> <u>K.L.R.</u>, <u>supra</u>. Accordingly, we conclude that the employee's constitutional challenge to § 25-5-17 on appeal is moot.

Based on the foregoing, the trial court's judgment is affirmed.

AFFIRMED.

Edwards, Hanson, and Bowden, JJ., concur.

Moore, P.J., recuses himself.